[Civ. No. 5582.   Third Appellate District.—July 6, 1936.]

F. C. DARBY, Respondent, v. BIGGS SCHOOL DISTRICT OF BUTTE COUNTY et al., Appellants.

J. R. King, Jr., Arthur B. Eddy and Elmer W. Armfield for Appellants.

J. M. McPherson and Charles H. Andrews for Respondent.

PLUMMER, J.—The appellants, S. M. Persons, N. E. Askew and C. H. Johnson, are the trustees of the appellant school district. The respondent was employed by the appellants on May 14, 1934, as a principal of the school district for the school year 1934–1935. The respondent had also been employed by the district as a teacher for a period of two years prior to May 14, 1934. The action of the board on May 14, 1934, was in reemployment of the respondent as a principal for the school year of 1934–1935. At a meeting held by the board of trustees of the Biggs School District on or about the 14th day of May, 1935, it was voted not to reemploy the respondent for the school year of 1935–1936. The respondent in this action was present at that meeting, and it appears from the record that one of the members of the board asked the respondent if it would be necessary to give him a written notice, to which the respondent replied that it would not be necessary. This is taken from the appellants' statement of the testimony. No notice in writing of the respondent's dismissal was ever offered to, served upon, or delivered to the respondent by any of the trustees, or anyone acting for them.

Section 5.681 of the School Code provides as follows: "On or before the fifteenth day of May in any year the governing board may give notice in writing to a probationary employee that his services will not be required for the ensuing year. Such notice shall be deemed sufficient and complete when delivered in person to such employee by the clerk or secretary of the governing board of the school district or deposited in the United States registered mail with postage prepaid, addressed to such employee at his last known place of address."

The record further shows that appellant, N. E. Askew, voted to renew the respondent's contract of employment, and that the appellant, C. H. Johnson, referring to the requirement of the written notice of dismissal, stated: "I do not believe it will be necessary to write out a notice for Mr. Darby. If the people come to me, I am going to change my vote". The record shows that relying upon this statement of the appellant Johnson, a petition, containing at least eighty-four names, was delivered to the board requesting the employment of the respondent. It does not appear, however, that any action was ever taken upon this petition, and some time during the following July, one H. Wayne Gillispie was employed to take the place of the respondent. On the day fixed for the opening of the school in the district, the respondent presented himself and offered his services as a teacher in said district, the appellants' trustee refusing to assign the respondent to any duties whatsoever.

This action was begun by the respondent to obtain a writ of mandate requiring the trustees of Biggs School District to assign him to duties as a teacher in said district, pursuant to a contract entered into between the respondent and the appellants on May 14, 1934; for his salary as such teacher; and for such other and further relief as to the court might seem just and proper. The respondent had judgment directing his restoration as a teacher in said district. From this judgment this appeal is prosecuted by the district and the trustees thereof.

No question is made that written notice of dismissal was not given to the respondent as required by section 5.681, *supra*, the appellants' contention being that the respondent had actual notice of his dismissal, and that he waived notice in writing.

By reason of the facts disclosed in the record and the testimony which is hereinafter set forth, it is unnecessary for us to decide whether waiver of written notice of dismissal may or may not be made by a probationary teacher. The trial court found that the respondent did not waive notice in writing, and if this finding is sustained by substantial testimony, then and in that case the appellants' argument to the effect that written notice of dismissal may be waived is entirely immaterial, even though we were to agree that the appellants' contention in this particular sets

forth a correct statement of the law. That there is such testimony clearly appears from the following excerpt thereof, to wit:

"You understood you were discharged at that time? A. I did not. I knew there had been several people come and ask me to remain in the school— Q. You understood, at that moment, when Mr. Persons and Johnson, two of the three trustees, agreed that you were dismissed for the ensuing school year of 1935 and 1936, that you were then discharged? A. No. I didn't take that definitely at all. Q. Did Mr. Johnson, the clerk of the board, thereafter ask you if you wanted a written notice of your dismissal? A. He said, 'I don't believe it will be necessary to write out a notice for Mr. Darby. If the people come to me, I am going to change my vote.' I said I didn't think it was, because I felt that the people would come, and it would be adjusted satisfactorily. Q. Isn't it a fact that you refused to receive written notice from Mr. Johnson? A. I did not. Q. Didn't he offer you a written notice on the 14th day of May, 1935? A. He didn't offer it. He had none written out. Q. Wasn't he sitting at the typewriter and just completed writing a notice of dismissal for one of the other probationary teachers? A. He wasn't seated there when the conversation came up. Q. It is your contention that you didn't know you were discharged when Mr. Persons and Mr. Johnson voted for your dismissal the night of May the 14th, 1935? A. That is correct."

The witness A. J. Store, on cross examination, relating his conversation with respondent on the morning of May 15, 1935, stated:

"Q. Did he tell you that Mr. Johnson would be willing to change his mind, or change his vote, provided someone went to him? A. He didn't exactly say that, but he gave me to understand Mr. Johnson would be the only member of the board that would be in a receptive mood to listen to argument in favor of him."

The witness Peter Cazassa, on cross examination, relating his conversation with respondent on May 15, 1935, stated: "Q. Didn't he talk to you about the fact that if you would intercede for him and go and see Mr. Johnson that this matter could be ironed out? A. I think he did say that, yes. Q. Isn't it a fact that you did have him, as a matter

of friendship, go to some of these people, did you not? A. I think I spoke to Charlie. Q. And Mr. Persons? A. We talked about it.''

The witness, L. W. Albers, on cross examination, relating his conversation with respondent on May 15, 1935, stated: ''Q. Did he tell you if certain people in the community should intercede in his behalf with Mr. Johnson that this matter could be ironed out? A. I think he did.. Q. Did you go to see anybody? A. I talked to Mr. Johnson. He drove by a few minutes afterwards. Q. Did you talk with Mr. Johnson? A. I talked with him about letting Mr. Darby go. Q. What did he have to say? A. I couldn't exactly tell you what he did say. Q. Did he say that there was a possibility that if the right persons came to see him that Mr. Darby would be reinstated? A. I think he did, yes.''

As against this testimony the appellants introduced a few witnesses, who testified substantially as did the appellant Persons, as follows:

(Witness): ''I signified my intention not to reemploy him. Q. Did Mr. Johnson? A. Yes. Q. Mr. Askew, at that time, voted for the reemployment of Mr. Darby? A. Yes. Q. Then what took place? A. Mr. Darby was asked if he wanted written notice of the dismissal. Q. Who asked him that question? A. Mr. Johnson. Q. What was the reply to that question? A. Mr. Darby informed him, 'No, I am man enough to take it, I don't need it.' Q. Do you know whether Mr. Johnson was preparing to write him a notice of dismissal? A. He was. At that time he was sitting next to me at the typewriter. I was at the end of the table, and the typewriter was right here. There was quite a discussion took place after that about allowing Mr. Darby to make application for the school, along with others that did. He made his application. I didn't enter into it, because I didn't vote for him anyway. However, he made the application. Q. Do you remember the words he used when he made his application? A. As I recall then: 'I now make application for the job.' I don't know the exact words. Q. Meaning the principalship of the Biggs Elementary School District for the years 1935 and 1936? A. Of course. Q. Did the board say anything concerning his application at that time? A. Charlie and Nathan told him they would

consider his application with the understanding that he had to beat the field to get the job. In our opinion he had to beat the best man to get the job.''

The contention of the appellants is further, that the court should have found in favor of the defense of waiver. The foregoing, however, shows that at best only a conflict of the testimony was presented to the trial court for consideration, and being only a conflict, the finding of the trial court thereon is binding upon us. This dispenses entirely, as we have said, with the necessity of any consideration as to whether a written notice of the dismissal of a probationary teacher may or may not be waived. The fact that the respondent knew of the action of the board, and subsequently stated to others the action of the board, constitutes no determinative factor in this case. That written notice is necessary, irrespective of the actual knowledge by a teacher of the action of the board of school trustees in voting for his dismissal, has been so often affirmed by the courts of this state as to become well-settled law, and needs no citation of the authorities. In the case of *Blalock* v. *Ridgway,* 92 Cal. App. 132 [267 Pac. 713], the record shows that the plaintiff, a teacher in the Olive School District of Tulare County, had actual notice of the action of the board of school trustees in voting for her dismissal. We do not need to list the cases affirming the decision in the Blalock case further than to state that this court, in *Sherman* v. *Board of Trustees,* 9 Cal. App. (2d) 262 [49 Pac. (2d) 350], reaffirmed that decision and cited the cases likewise supporting the doctrine that written notice of dismissal is mandatory.

No written notice of dismissal having been given by the appellants to the respondent, and the court having found, upon substantial testimony, that the giving of written notice was not waived, it follows that the judgment of the trial court must be, and the same is, hereby affirmed.

Thompson, J., and Pullen, P. J., concurred.