[Civ. No. 1317.  First Appellate District.—March 30, 1914.]

THE PEOPLE, by E. C. Cooper, State Insurance Commissioner, Respondent, v. J. A. MERRILL et al., Appellants.

INSURANCE BROKER—PROCURING POLICIES FOR UNAUTHORIZED COMPANIES—PERCENTAGE DUE STATE—CREDIT FOR RETURN PREMIUMS.—A broker licensed to procure policies of insurance on risks for insurance companies not authorized to transact business within the state, is entitled, under section 596 of the Political Code, in computing the percentage due the state, to credit for return premiums on any insurance procured and placed by him, regardless of whether or not the premium was actually returned to the insured within the calendar year in which the business was written.

ID.—STATUTORY CONSTRUCTION—PURPOSE OF ENACTMENT.—In searching for and declaring the legislative intent of an ambiguous statute, courts are not restricted to that construction which will give only a literal effect to every word and phrase appearing by the letter of the law, but may rightfully resort to a consideration of the purpose to be accomplished by the enactment of the statute. Therefore when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent.

ID.—REASON AND SPIRIT OF ACT—AVOIDING INTERPRETATION INCONSISTENT WITH.—In the presence of a patent ambiguity courts must, in construing a statute, reject an interpretation which, if followed, would lead to a conclusion clearly inconsistent in its consequences with the reason and spirit of the statute.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Wise, Sapiro & O'Connor, for Appellants.

John W. Stetson, for Respondent.

LENNON, P. J.—In this action the plaintiff recovered a judgment in the sum of $359.64 against the defendant J. A. Merrill as principal, and the defendant United States Fidelity and Guaranty Company as surety, upon a bond in the sum

of twenty thousand dollars, running to the people of the state of California, which was given, pursuant to the provisions of section 596 of the Political Code, in consideration of a license issued to the defendant Merrill, permitting him to procure policies of insurance on risks located in the state of California for insurance companies not authorized to transact business within the state.

The obligation of the bond in suit is best stated in its own language as follows:

''Whereas, the above bounden principal is about to apply or has applied to the insurance commissioner of the state of California for a license pursuant to the provisions of section 596 of the Political Code of said state, permitting him, the said above bounden principal, to procure policies of insurance on risks located in the said state of California, for companies not authorized to transact business in the state of California;

''Now, therefore, if the said above bounden principal and licensee shall faithfully comply with all the requirements of section 596 of the Political Code of the state of California, and shall file with the insurance commissioner of the state of California, on or before the first day of March of each year, a sworn statement of the gross premiums charged for insurance procured or placed, and the gross return premiums on such insurance canceled, under such license during the year ending the 31st day of December last preceding, and shall pay to the insurance commissioner of the state of California, for the use and benefit of said state, an amount equal to four per cent of such gross premiums less such return premiums so reported, then this obligation to be void, otherwise to remain in full force and effect.''

Briefly stated, the preliminary provisions of the statute requiring and governing the giving of the bond in suit relate to the manner in which insurance may be procured and placed in companies not authorized to do business in the state of California; and in that behalf authorize the insurance commissioner of the state of California to issue a license upon the payment of a fee of fifty dollars, permitting a citizen to procure policies on risks in this state for such unauthorized companies. Two paragraphs of the statute in question, which

cover and control the giving of the bond in suit, are as follows:

"Account of Business.—Every person so licensed shall keep a separate account of the business done under said license open at all times to the inspection of such insurance commissioner, and, shall file a certified copy thereof forthwith with the insurance commissioner, showing the exact amount and character of such insurance placed for any person, firm, or corporation, the gross premiums charged thereon, the companies in which the same is placed, the dates of the policies and the terms thereof, the location of the insured property, and also a report in the same detail of all such policies canceled and the gross return thereon.

"Bond of Licensee.—Before receiving such license the persons licensed shall execute and deliver to the insurance commissioner a bond to the people of the state of California in the penal sum of twenty thousand dollars, with such sureties as the commissioner shall approve, conditioned that the licensee shall faithfully comply with all the requirements of this section, and will file with the insurance commissioner on or before the 1st day of March of each year, a sworn statement of the gross premiums charged for insurance procured or placed, and the gross return premiums on such insurance canceled, under such license during the year ending on the 31st day of December last preceding, and will pay to the insurance commissioner of the state of California, for the use and benefit of said state, an amount equal to four per cent of such gross premiums less such return premiums so reported, and in default of the payment of any sum imposed by this section, the said insurance commissioner may sue for the same in any court of record in this state."

The execution of the bond and the issuance of a state license to the defendant Merrill, permitting him to procure policies of insurance on risks located in this state for companies not authorized to do business in this state, were not denied. The case was tried and determined solely upon an agreed statement of facts which, among other things, showed in substance that the defendant Merrill, while operating under the state's license, had collected the sum of $9,295.88 as premiums for policies of insurance placed by him in unauthorized companies during the year ending December 31, 1910; that he

had actually returned gross premiums in the sum of $3,006.48 on account of the cancellation of insurance policies placed subsequent to December 31, 1909, and during the year 1910; and that the tax due to the state for and on account of the insurance policies placed and reported during the period mentioned amounted to the sum of $254.54. It was further agreed that the defendant Merrill had returned gross premiums amounting to $482.30 to policy holders during the year 1910, on policies procured during the year 1909.

Upon the trial of the case it was stipulated that the sole issue presented by the pleadings and covered by the statement of facts was the right of the defendant Merrill to a credit of four per cent ($19.20) upon the amount of the gross premiums ($482.30) returned to policy holders during the year 1910 on policies procured during the year 1909. Upon this appeal from the judgment the only contention made is that the defendant Merrill should have been given the credit which he claimed in the lower court.

This contention calls for a construction of the provisions of section 596 of the Political Code as it existed in 1910. Appellants insist that the provisions of the statute in question relating to the credit to be allowed for return premiums should be construed as compelling the insurance commissioner to credit the broker with any premiums returned regardless of the calendar year in which such premiums were paid. The respondent, on the other hand, insists that the statute warrants and requires the construction that the broker shall have no credit for return premiums on any insurance procured and placed by him, unless the premium is actually returned to the insured within the calendar year in which the business was written.

We are of the opinion that the contention of the appellants must be sustained. That contention is rightfully rested upon an obvious uncertainty in the language of the second paragraph of the statute, which relates to the ascertainment and collection of the tax in controversy. The uncertainty in the paragraph in the particulars stated is so pronounced that the rules of statutory construction must be invoked and applied to the entire statute in order to ascertain the legislative intent. The fundamentals of the rule of statutory construction may be stated to be as follows: "The intent of the stat-

ute is the law. The intent is the vital part, the essence of the law; and the primary rule of construction is to ascertain and give effect to that intent. . . . The intention of the legislature in enacting the law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute. Courts will not follow the letter of the statute when it leads away from the true intent and purpose of the legislature, and to consequences inconsistent with the general purposes of the act.'' (2 Sutherland on Statutory Construction, 2d ed., sec. 363.)

In searching for and declaring the legislative intent of an ambiguous statute we are not restricted to that construction which will give only a literal effect to every word and phrase appearing by the letter of the law, but we may rightfully resort to a consideration of the purpose to be accomplished by the enactment of the statute. (*People* v. *Earl,* 19 Cal. App. 69, [124 Pac. 887]; *Bannerman* v. *Boyle,* 160 Cal. 197, [116 Pac. 732].) Therefore, when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent.

Presumably when the legislature licensed brokers to place policies of insurance in unauthorized companies, and provided a tax therefor, it was the intention to permit such brokers to do business upon a profitable rather than a prohibitive basis. Plainly the purpose of the statute was to impose a fixed tax upon the gross premiums received less those actually returned to the insured and reported; whereas the construction of the statute contended for by the respondent would result in an uncertain percentage tax, capriciously based upon a fortuitous event, and which might range so high as to practically tax the broker out of business. For instance, we will suppose a policy issued in December in any given year for a premium of one hundred dollars, and canceled the following January, with a resulting return premium of eighty dollars. In such a case, under the construction contended for by the respondent, the broker would be compelled to pay a four per cent tax upon the full premium, which would be tantamount to a twenty per cent tax upon

the twenty dollar premium that had been actually earned; whereas, if the policy had been written in November and canceled in December, the tax would be but four per cent upon such earned premium. It may be conceded that the legislature might, if it saw fit, refuse to license such brokers altogether; but having made provision for a license it is inconceivable that it was the legislative intent to impose a practically prohibitive tax; and in the absence of unequivocal language indicating such intent the contrary will be presumed. However that may be, it is certain that in the presence of a patent ambiguity we must, in construing the statute, reject an interpretation which, if followed, would lead to a conclusion clearly inconsistent in its consequences with the reason and spirit of the statute. Rejecting such interpretation we are then required to resort to that construction by which such consequences may be avoided and to which the statute as a whole readily responds. (2 Sutherland on Statutory Construction, 2d ed., sec. 367.)

It is conceded that the credit to be allowed the broker for gross return premiums on canceled policies is ultimately indicated by the phrase "such return premiums so reported," found in the second paragraph of the statute. If this paragraph contained in itself a complete expression of the legislative will with reference to the credit to be allowed the broker it might be said —not without some slight uncertainty, however—that the phrase "such return premiums so reported" refers exclusively to the immediately preceding clause of the same paragraph, viz., "the gross return premiums on such insurance canceled under such license during the year ending on the 31st day of December last preceding." Under like circumstances it might be said that the words "such insurance" in the phrase last quoted refer back again to that clause of the second paragraph which requires the broker to file "with the insurance commissioner on or before the 1st day of March of each year a sworn statement of the gross premiums charged for insurance procured or placed," etc. In short, if it could be fairly said that the provisions of the second paragraph standing alone completely and exclusively cover the subject of the ascertainment and collection of the tax in controversy, we might be permitted to construe the statute to mean that the broker is entitled to credit only on the return premiums on

such policiés as were canceled during the year in which the
business was written. The second paragraph of the statute,
however, does not exclusively and conclusively dispose of the
credit to be allowed to the broker. To so hold, we would be
compelled to ignore the provisions of the first paragraph,
which in a material measure relate to the subject of ''gross
return premiums on canceled policies.'' In this behalf it
will be noted that the first paragraph of the statute, under
the heading of ''Account of Business,'' requires the broker
to file an account of insurance placed, the gross premiums
charged thereon, and also ''a report in the same detail of all
policies canceled and the gross return thereon.'' Clearly this
clause of the statute compels the broker to report every pre-
mium returned on canceled policies, regardless of the year
in which such policies were written and the premiums thereon
returned. If such a report was not required and intended
to aid in the ascertainment of the credit to be allowed the
broker, then its purpose is not apparent. When the statute
is read and considered in its entirety the uncertainty with
reference to the credit to be allowed the broker for return
premiums, is created by that clause of the second paragraph
of the statute which requires the broker to file a bond, con-
ditioned that he will make a sworn statement of the gross
premiums charged for insurance and the gross return pre-
miums on ''such insurance'' canceled during the preceding
year. The grammatical arrangement of the language of the
paragraph in question tends to the conclusion that the words
''such insurance'' relate solely to policies that'were placed
and canceled during the calendar year in which they were
written. Such conclusion, however, is rendered doubtful if
not entirely negatived by a consideration of the scope and
effect of the controlling phrase in the same paragraph, which
reads ''Such return premiums so reported.'' This is so be-
cause the only preceding specific reference to a required
report of ''all policies canceled and the gross return thereon''
is to be found in the first paragraph of the statute, and cov-
ers all premiums returned irrespective of the year in which
the policy was written. Obviously the statute must be con-
sidered and construed in its entirety; and if the phrase last
quoted be read in conjunction with the provisions of the first
paragraph of the statute no uncertainty exists, because with

such a reading it may be fairly said that the words "so reported" as used in the second paragraph refer to the report specifically designated and required by the provisions of the first paragraph of the statute, which, without reference to the time of cancellation, must show "in detail all of the policies canceled and the gross return thereon."

This construction of the statute is not only in keeping with its plain purpose, but harmonizes as well with the language of the statute as a whole; and, if correct, it follows that Merrill, the broker in the present case, should have been credited by the court below with all return premiums on policies procured pursuant to the license granted him, without regard to the year in which the policies, the cancellation of which gave rise to the return of premiums, were written.

The judgment appealed from is modified by striking therefrom the sum of nineteen dollars and twenty cents, and as so modified the judgment will stand affirmed.

Kerrigan, J., and Richards, J., concurred.