[Civ. No. 5954. Second Appellate District, Division Two.—May 22, 1928.]

VIRGINIA L. BLALOCK, Appellant, v. L. A. RIDGWAY et al., Respondents.

Ugene U. Blalock for Appellant.

Leroy McCormick and Walter C. Haight for Respondents.

THOMPSON, J.—The plaintiff filed a petition in the superior court seeking the writ of *mandamus* to compel the Board of Trustees of the Olive School District of Tulare County, to draw a warrant for certain salary alleged to be due plaintiff as a teacher in said school, and directing them to reinstate her as such teacher. Judgment was entered denying the peremptory writ and this appeal is from that judgment.

The record discloses that appellant was a probationary teacher and acting as the sole teacher of the school during the school year of 1926–1927, ending about May 25, 1927, at a salary of $150 per month for the nine months of the school year. An attempt was made to terminate this employment and not to renew it for the succeeding year. As we view the proceeding, the sole question is whether the attempt .was

effective, or whether by the provisions of the law appellant was re-employed for the school year of 1927–1928.

Section 1609 of the Political Code in its essential provisions provides that boards of education "Shall have power and it shall be their duty: . . . Second—to employ the teachers as provided in part fifth of this section; . . . provided, that no board shall enter into any contract with such employee, other than teachers to extend beyond the close of the next ensuing school year; except that teachers may be elected on or after May Second for the next ensuing school year *and each teacher so elected shall be deemed re-elected from year to year except as hereinafter specified;* Fifth— . . . (d) To classify as probationary teachers those persons employed as teachers for the school year, and who have not been classified as permanent teachers, as hereinafter provided, such classification to be made at the time of employment, and thereafter in the month of July of each school year. . . . (i) To dismiss probationary teachers during the school year *for cause only,* as in the case of permanent teachers, except that on or before the tenth day of June in any year the governing board may give notice in writing to a probationary teacher that his services will not be required for the ensuing school year. Such notice shall be deemed sufficient and complete when delivered in person to the teacher by the clerk or secretary of the governing board of the school district or deposited in the United States registered mail with postage prepaid, addressed to such teacher at his last known place of address." (Italics ours.) And there also follows a provision that in the case of permanent teachers they shall not be dismissed except for cause and then only after a hearing and investigation of the charges.

It appears from the testimony of J. H. Hayes, the clerk of the Board of Trustees, that on May 23, 1927, the board held a meeting, all members being present, at which it was resolved not to employ appellant for the following year; that on the morning of May 25, 1927, Mr. Hayes informed appellant at his home of this action of the board. During the ensuing two weeks appellant discussed this action of the board with Hayes, the clerk, and members of the board, and circulated a petition or paper among the parents stating that they wanted her; this, she says, was done by her upon

the suggestion of a board member that if the parents did want her, that it could be taken care of. On June 8, 1927, a written notice was mailed to appellant in Porterville, where she then lived. Appellant testified she received this letter, and there is no contradiction of her testimony, on June 16, 1927. On June 23, 1927, a registered letter was deposited, directed to the appellant, notifying her to the same effect.

The respondents contend that the court was correct in its finding that the appellant had actual notice and that the provisions of the statute were substantially complied with, that the requirements therein contained for the dismissal of a probationary teacher are directory and not mandatory.

■ The primary rule of statutory construction to which all others must yield is to determine the intent of the legislature. (*San Francisco* v. *Mooney,* 106 Cal. 586 [39 Pac. 852], and *Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120].) When this intent is ascertained it will not be departed from if reasonably possible to avoid it. (*People* v. *Merrill,* 24 Cal. App. 210 [140 Pac. 1075].)

In the case of *Owens* v. *Board of Education,* 68 Cal. App. 403 [229 Pac. 881], the court indicates the legislative intent of the act here under consideration. After stating that the statute is known as the Teachers Tenure Act and quoting the provisions pertinent to that case says: "Thus a 'probationary' teacher is re-elected and re-employed annually until entitled to classification as a 'permanent' teacher, and the board of education is required to report the employment of such teacher annually to meet the terms of the statute and the teacher thereby becomes *automatically* classified as a permanent teacher at the end of two years of successful service." (Italics ours.) Again, the opinion says: "This contract terminated with the school year of 1921–1922, but was *deemed* continued in force, unless, before the 10th of June, the board should give the appellant notice in writing that her services would not be required for the following school year." (Italics ours.) Also the court, after stating that the notice was given as required, says: "Nothing appearing from which it could be inferred that *a contract under the tenure act arose. . . .* " (Italics ours.)

■ It seems to us apparent from this authority and from the language of the act, that the legislative intent is manifest

to give assurance to the teaching profession of some degree of certainty in their employment—something akin to civil service in other administrative branches of government. With this intent before us, having in mind that the statute provides that each teacher employed for one year shall be deemed re-employed, except discharged for cause after hearing, or in the case of a probationary teacher, by serving her with a notice in writing on or before June 10th, we conclude that the intent and meaning of the law is as though it read: permanent teachers cannot be discharged except for good cause after hearing, and probationary teachers cannot be discharged except for good cause after hearing, or by serving them with a written notice on or before June 10th, that their services will not be required for the ensuing year. Service of the written notice shall be made personally or by mailing—and if by mail, shall be complete only when deposited in the mail, provided it is registered. It must be apparent that, except for good cause, the Board of Trustees could not discharge a probationary teacher on April 1st, let us say, so as to dispense with her services for the remainder of that school year. It must be equally clear that on June 11th, they could not dispense with her services except for good cause, for the very obvious reason that the law, operating upon their inaction, has brought into being on that day a new contract for the ensuing year which is just as obligatory upon the board as the one which existed on April 1st. It would follow in logical sequence that the legislature declared its intention to fix the tenth day of June as the dead line—to make the giving of a written notice before that time the essence of the thing to be done to effectuate the discharge. In such cases the requirements of the statute must be held to be mandatory and not merely directory. (*People ex rel. McKune* v. *Weller*, 11 Cal. 49 [70 Am. Dec. 754].) Another manner of phrasing the effect of the statute is to say that the legislature has defined the limits of the power or jurisdiction of the Board of Trustees to discharge a probationary teacher, and this constrains us to declare that its provisions are mandatory. (Lewis' Sutherland on Statutory Construction, vol. II, 2d ed., sec. 611; *Gleason* v. *Spray*, 81 Cal. 217 [15 Am. St. Rep. 47, 22 Pac. 551].) In the latter case the language of the court is this: "When a statute says

an act cannot be done unless performed in a certain mode, the inhibition against performing it in any other way would seem to be, in view of the word 'cannot,' meaning an absence of power, to be just as strong and complete as when the statute says that an act, unless done in a certain mode, shall not be valid for any purpose."

This completely disposes of the argument that the provisions of the statute are directory merely, for the reason that the legislature has said in effect that the board "cannot" discharge a probationary teacher except in the mode and manner specified. This they did not do. Oral—informal notice was not sufficient under the law; the written—unregistered notice was not served upon her until received by her on the 16th; and the registered notice was not mailed until after the contract of re-employment had been brought into being by operation of law.

Judgment reversed.

Craig, Acting P. J., concurred.

VALENTINE, J., *pro tem.*, Dissenting.—I dissent. It is unthinkable that the legislature should intend to enact any provision which would make the financial interests of a teacher paramount to the best interests, welfare, and proper education of the school children. The whole system of legislation regulating the educational machinery was based upon consideration of the welfare and best interests of the children as the original and fundamental purpose. The proper regulation of the tenure of office and other rights of the teachers was also properly considered and regulated—but the original purpose and fundamental idea was the consideration of the best interests and welfare of the scholars. In every act of the legislature relating to education, where the intention is not clearly expressed, it must be assumed that the fundamental purpose and primary object of the legislature was to consider first this welfare and best interests of the children. Every act of the legislature attempting to regulate the machinery of the system of education must be construed with this elementary and fundamental purpose and intention in mind. No person incompetent, or an improper teacher, for any reason, should be permitted to teach the children. The legislature has im-

posed the duty and responsibility of determining and deciding who are and who are not such qualified teachers upon the trustees of the school board. They have this right, duty and responsibility and their decision is final in this regard. It is true that the act under consideration is known as the Teachers Tenure Act and that the purpose of the legislature undoubtedly was to protect the teachers and to fix clearly their rights as to their employment as such, but the teachers are employed as a part of the whole scheme and for the purpose of educating the school children. So that in the instant case we have this situation, if we accept the construction of the statute of the prevailing opinion, that after the board had decided that the appellant should not be re-employed as a probationary teacher, they neglected to register the written notice of such decision which was mailed to her on June 8th, two days before the date fixed in the act, and although she had actual verbal notice of this action of the board two days after it was taken, and on the last day of the school year, nevertheless the appellant may insist upon her right to teach and the school children must be taught for another year beginning the following September by a teacher who has been declared, at least by implication, an incompetent or improper person to teach them. It must not be understood that this implies in any way any reflection upon the appellant in this case personally. The record discloses only a local neighborhood controversy, important, no doubt, to the local persons and factions involved. But the court may not concern itself with such matters and must only consider the principles of law involved.

In the instant case the mandatory act was that the Board of Trustees must decide whether or not the appellant was qualified as a teacher and should be re-employed for another year. They decided she should not be so re-employed. The record does not disclose why, but the board had the responsibility, the duty and the power to decide this and their decision was final. This was the determination of the fundamental question involving the best interests and welfare of the children. After deciding this the statute imposed on them a further duty—to consider the interests of the teacher by giving her notice of their decision that she was not to be re-employed for the succeeding year, so that she

might have ample time to govern herself accordingly and make other arrangements. The legislature provided two methods of giving this notice—either by written notice served personally, or by written notice sent by registered mail prior to June 10th.

In the instant case appellant had actual verbal notice two days after the action of the board, and a written notice mailed on the 8th of June, which, it must be admitted, would have been a sufficient compliance with the statute if it had been registered. So in the last analysis appellant's cause of complaint as to not having received a notice as prescribed by the statute is that the written notice, mailed to her on June 8th, was not registered. In what respect can she claim to have been misled or damaged? There is no such showing made here. The requirement for the return of a registry receipt would seem to be for the convenience of the board rather than the teacher. (*Buswell* v. *Supervisors, etc.,* 116 Cal. 351, at p. 354 [48 Pac. 226].) The case of *Owens* v. *Board of Education,* 68 Cal. App. 403 [229 Pac. 881], cited in the prevailing opinion, has, in my opinion, no application here. In that case no question as to the sufficiency of the notice of re-employment was raised. It was assumed that the notice was sufficient. In the instant case the question of the sufficiency of the notice is the main question involved.

The fundamental principle involved in cases of statutory construction, like the present, as the writer understands it, is—who did the legislature intend to protect? And so in the case of *Gleason* v. *Spray,* 81 Cal. 217 [15 Am. St. Rep. 47, 22 Pac. 551], also cited in the prevailing opinion, the court justly and equitably held that the intention of the legislature was to protect the wife in the enjoyment of her rights in the homestead. In the instant case, the school children are to be first protected in their right to have a competent, properly qualified teacher to teach them, and upon the Board of Trustees is imposed the right and the duty to decide who is so qualified as such a teacher. After they have discharged this duty, then, in justice to the teacher, they must give her such reasonable and timely notice if they decide she is not qualified (as stated above) as will enable her to make other arrangements. Appellant had such notice in the instant case. The arbitrary date

of June 10th for this notice to be given has no significance as a particular date. The legislature might have fixed June 15th, or June 20th, as an indication of the time which they considered would be reasonable.

The paragraph in the statute which provides the procedure for dismissal contains two sections. In the first sentence it is provided that the board may give notice by June 10th that the teacher's services will not be required. There is no question but that notice was given in due time to appellant. The next sentence of the paragraph provides a method for serving the notice which, if followed, will be deemed sufficient. It might well be argued that the statute does not provide that it is obligatory to give the notice in the manner suggested—nor is it provided that actual notice given in some other manner will not be sufficient, and that it "none the less fully served the purpose for which it was designed." (*Shorr* v. *City of Azusa*, 38 Cal. App., at p. 712 [177 Pac. 515].)

The determination of the teacher's qualification to teach is the fundamental consideration and this is mandatory; the giving of the notice of this determination is directory. In *People* v. *Lake Co.*, 33 Cal., at p. 492, the court says: "The books are teeming with cases in which the court has come to the aid of the legislature, and by construing one provision of an act as mandatory and another as directory, so as to make them harmonize with the principal purpose of the act, have made its operation possible." (*McCrea* v. *Haraszthy*, 51 Cal., at p. 150; *Hart* v. *Plum*, 14 Cal. 148.)

In *People* v. *Cook*, 14 Barb. (N. Y.) at p. 290, the court says: "Whether these other provisions of the statute, which have not been strictly observed in this case, are to be regarded as directory or mandatory or not, must depend upon a sound construction of the nature and object of the requirements."

The judgment should be affirmed.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1928.

All the Justices present concurred.