[Civ. No. 9733. Fourth Dist., Div. One. July 29, 1970.]

MARGARET L. SPERLING et al., Plaintiffs and Appellants, v. EDWIN C. HATCH, Defendant and Respondent.

COUNSEL

Casey, McClenahan & Fraley and Thomas W. Hauser for Plaintiffs and Appellants.

Todd & Toothacre, William L. Todd, Jr., and John R. Wingert for Defendant and Respondent.

OPINION

AULT, J.—Margaret L. Sperling and William F. Sperling sustained personal injuries in a single car accident which occurred on Los Coches Road, near Lakeside, California, on October 21, 1966. They brought suit against Edwin C. Hatch, doing business as Hatch Chevrolet, from whom the car had been purchased three months before, claiming the accident was caused by defective brakes. Trial was commenced before a jury; at the close of the plaintiffs' case, the trial court granted defendant's motion for a nonsuit on the ground the evidence established, as a matter of law, the affirmative defense of an assumption of the risk as to both plaintiffs. The Sperlings have appealed from the judgment entered on the nonsuit; they question the propriety of the nonsuit and maintain the issue of assumption of the risk should have been submitted to the jury.

 At the outset, we note a trial court may grant a motion for nonsuit: "when, and only when, disregarding conflicting evidence, and giving to plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff." (*Card* v. *Boms*, 210 Cal. 200, 202 [291 P. 190].) (See also *Raber* v. *Tumin*, 36 Cal.2d 654, 656 [226 P.2d 574].)

 While a judgment of nonsuit is an adjudication upon the merits, it must be viewed differently from the ordinary appeal where the appellate court is required to indulge every reasonable intendment in favor of sustaining the trial court. To the contrary, when reviewing a judgment based upon a nonsuit, the appellate court: "must view the evidence in the light most favorable to the appellant, must disregard all inconsistencies and draw only inferences from the evidence which can reasonably be drawn which are favorable to the appellant." (*Van Zyl* v. *Spiegelberg*, 2 Cal.App.3d 367, 372 [82 Cal.Rptr. 689].) (See also *Golceff* v. *Sugarman*, 36 Cal.2d 152, 153 [222 P.2d 665].)

To comply with these rules, we must view the evidence bearing on the issue of assumption of the risk in the light most favorable to plaintiffs. No point would be served in detailing the evidence of Mrs. Sperling's trials and tribulations with the defective brakes on the car. (During this period of time, the Sperlings were separated and Mrs. Sperling had possession of the car.) It is sufficient to point out: The Sperlings were assured when they purchased the 1963 Chevrolet automobile from respondent on July 18, 1966, the car had had a "complete brake job." Beginning about two weeks later and continuing through October 21, 1966, the date of the accident, Mrs. Sperling consistently and continuously had difficulty with the brakes on the car. She returned it to respondent's place of business on numerous occasions, complaining about the brakes and requesting respondent to fix them. Sometimes the brakes seemed to work for a day or so after the car was returned to her, but the trouble reoccurred. Although the car had a "complete brake job" before its sale, respondent performed a major brake adjustment and overhaul of the master cylinder. The car had been designed and manufactured for "self-adjusting brakes," but it was not so equipped, and respondent finally installed self-adjusting brake kits on the wheels. At least three times during the month of October, Mrs. Sperling returned the car to respondent for repairs to the brakes, stating the right front wheel "grabbed" and the car pulled to the right when the brakes were applied. On the morning of the accident, she again returned the car to respondent, stating "either fix it once and for all or take the car back." She was told to leave the car and they would look it over. When she came back to pick up the car and told respondent's employee the brakes "still didn't feel right," she was told the problem was "all in her head." She asked respondent's employee to take the car back and was told to "bring it back tomorrow and we'll look at it."

Mr. and Mrs. Sperling met that day during the lunch hour, and Mrs. Sperling told her husband about the problem she was having with the brakes on the car. Mr. Sperling drove the car and tested the brakes. He noticed when the brakes were applied, "The thing would just grab and pull to the right on the right front wheel." He warned his wife not to apply the brakes suddenly at a speed of 40 to 45 miles per hour and stated he would fix the brakes himself that weekend.

Plaintiffs again met after work the same afternoon, paid some bills, and drove toward Mr. Sperling's home in Lakeside, with Mrs. Sperling driving. It was dark and the cars on the highway had their lights on. As the car approached a curve in the road, Mrs. Sperling noticed a car traveling in the opposite direction come into her lane of traffic. She applied the brakes, and the right front wheel grabbed so she released them. Believing the car to be out of control she applied the brakes again, this time with greater

force. The right front wheel again grabbed, the car went out of control, off the highway, and turned over two times. The Sperlings estimated the car's speed at 45 miles per hour; a witness to the accident estimated the speed of the car at 55 miles per hour. Both plaintiffs suffered personal injuries in the accident, but Mr. Sperling, who was ejected from the car, sustained the more serious injuries.

An expert witness in the field of brake repair examined the brake shoes from the car's right front wheel. He testified the secondary brake shoe had been charred from overheating and gave his opinion an automobile with a charred brake lining would not stop in a normal fashion.

On the issue of assumption of the risk, the testimony of Mr. Sperling on cross-examination is significant and bears repeating in some detail. He admitted he had driven the car and tested the brakes at noon on the day of the accident. He stated he had a four-year course in automobile mechanics in school which included study on brakes. He had a similar course while in the service which also included study and work on brakes. From the date he was discharged from the service in 1955, he had always done his own work on his own cars including the work on brakes. In connection with brake work he stated he had done "... complete jobs, rebuilding master cylinders, wheel cylinders, turning drums, arcing shoes, from the ground on up, you might say."

About his testing the car on the day of the accident, he was asked:

"Q. And when you operated the car, and put on the brakes, did you notice any problem?

"A. Definitely.

"Q. What was the problem you noticed?

"A. The thing would just grab and pull to the right on the right front wheel, and that's when I also made the statement to her, I says, 'Well, just bring it on over Saturday and I will do the brakes myself on it.'

"Q. Did you—were you concerned about that condition?

"A. Yes, I was.

"Q. What was your concern?

"A. Well, if you are going down the road and you are traveling at a pretty good pace and you have to use them brakes and the thing does that, well, you are going to lose control of it. It's going to the right.

"Q. This was the concern that you felt at the time you discussed it with your wife?

"A. Right.

. . . . . . . .. . . . .

"Q. And was this concern the one that caused you to warn her to be very careful in the way she operated the car?

"A. That is right.

"Q. Because you were aware that if you operated that car at a, as you put it, pretty good clip, and had to put on your brakes you could lose control of the car?

"A. Very true.

"Q. And what do you mean by 'pretty good clip'?

"A. Well, say you are going forty, forty-five, or something like that, down the highway and you have to use them in an emergency, well, you are going to apply them quite severely, and that's just exactly what happened.

"Q. So the very thing that you were afraid of is what happened?

"A. Right.

"Q. And that was the fear that you conveyed to your wife at noon on the day of this accident?

"A. That's right.

"Q. Even though you had this fear and even though you expressed it to your wife at noon on the day of the accident, you were still willing to ride in the car?

"A. Yes.

"Q. And travel that pretty good clip, as you state?

"A. Well, we were making sure that when we did have to use them, that she would use them gently.

"Q. But in the end she didn't use them gently, did she?

"A. Well, she had good reason not to.

"Q. And this was the kind of incident that had caused your concern at noon?

"A. Right.

"Q. And with that knowledge at that time, you were still willing to go ahead and ride at forty-five miles an hour in the car with her; is that right, sir?

"A. I guess so, yes."

■ The affirmative defense of assumption of the risk applies only when the accident arises from a danger known to the injured person before the accident, and where the evidence shows he voluntarily chose to enter into the zone of known danger. (*Vierra* v. *Fifth Avenue Rental Service,* 60 Cal.2d 266, 270-271 [32 Cal.Rptr. 193, 383 P.2d 777].) ■ The defenses of assumption of the risk and contributory negligence frequently overlap, but assumption of the risk, as distinguished from contributory negligence, requires the injured person to have actual, rather than constructive, knowledge of the danger. (*Grey* v. *Fibreboard Paper Products Co.,* 65 Cal.2d 240, 245 [53 Cal.Rptr. 545, 418 P.2d 153]; *Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266, 271.) ■ Even where an obvious risk is involved, the plaintiff's denial he knew or appreciated the risk, presents a question of fact for jury determination. In such a situation, the trier of fact may disbelieve the denial and draw the inference the plaintiff had actual knowledge of the danger involved. (*Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 4 Cal.App.3d 129, 138 [84 Cal.Rptr. 449]; *Tavernier* v. *Maes,* 242 Cal.App.2d 532, 552 [51 Cal.Rptr. 575].) ■ Where, however, the plaintiff, by his own testimony, concedes he voluntarily exposed himself to a known danger and knew and appreciated the risk involved, the defense of assumption of the risk is established by direct evidence, and may exist as a matter of law. (*Smith* v. *Southern Pac. Co.,* 222 Cal.App.2d 728, 731-733 [35 Cal.Rptr. 575].)

■ To warrant application of the doctrine of assumption of the risk, the evidence must disclose the injured person appreciated the particular risk involved.

■ "He does not assume any risk he does not know or appreciate. [Citation.] Stated another way, before the doctrine is applicable, the victim must have not only general knowledge of a danger, but must have knowledge of the particular danger, that is, knowledge of the magnitude of the risk involved." (*Vierra* v. *Fifth Avenue Rental Service, supra,* 60 Cal.2d 266, 271.) But neither knowledge of the danger involved, nor appreciation of the magnitude of the risk, requires the clairvoyance to foresee the exact accident and injury which in fact occurred. The threat of injury need not be so great that it is probable. It is sufficient if it is known to be "within the range of possibilities; neither sure nor necessarily apt to happen; but one that will happen if the conditions are ripe for it." (*Tavernier* v. *Maes, supra,* 242 Cal.App.2d 532, 544.) ■ Contrary to Mr. Sperling's contention, appreciation of the magnitude of the risk does not require him to have had the prescience to foresee the exact emergency which in fact occurred. It is enough that he realized, as he concedes he did, any emergency requiring the sudden application of the brakes would cause the car to go out of control.

The issue of assumption of the risk is a question of fact for jury determination in all but the clearest cases. (Prosser, Law of Torts (3d ed.) pp. 433-454.) Actual knowledge of the risk and appreciation of its magnitude are subjective requisites, rarely susceptible of proof by direct evidence. Ordinarily, these elements of the defense can only be established by circumstantial evidence, by proof of facts from which their existence is implied. When such proof is relied upon, it is for the jury to determine whether the required inferences should, or should not, be drawn. Where, however, a plaintiff admits in his own testimony he had knowledge of the danger and appreciated the risk involved, the elements of the defense are established by direct testimony; there is no room for conflicting inferences and no fact question is presented for jury determination. (*Smith* v. *Southern Pac. Co., supra,* 222 Cal.App.2d 728, 731-733.)

Mr. Sperling's testimony clearly and unequivocally demonstrates he voluntarily assumed the risk inherent in riding in the Chevrolet automobile with defective brakes. The testimony reveals: He was knowledgeable about and experienced with automobile brakes. He had tested the car's brakes on the day of the accident. He knew the brakes were defective, that the right front wheel "grabbed," causing the car to veer to the right. He was concerned about the defect. He realized any sudden application of the brakes in an emergency at speeds from 40 to 45 miles per hour would cause the driver to lose control of the car. Nevertheless, he willingly rode in the car with his wife at the higher of those speeds. In his own words, the very emergency he anticipated occurred, and the exact result he feared came about. As to him, there is no conflict in the evidence on the issue of assumption of the risk. The defense was established by his own testimony directly, with no need to resolve conflicting inferences; it was established as a matter of law.

As to Mrs. Sperling, however, evidence relating to her knowledge of the risk and appreciation of its magnitude was neither direct nor unequivocal, as in her husband's case. Moreover, respondent's employees had assured her the brake problem was a figment of her imagination. Mrs. Sperling's assumption of the risk presented a question of fact for the jury. (See *Gallegos* v. *Nash, San Francisco,* 137 Cal.App.2d 14, 20 [289 P.2d 835].)

The judgment is affirmed as to the plaintiff, William F. Sperling, and reversed as to the plaintiff, Margaret L. Sperling.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 22, 1970. Peters, J., Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.