[Civ. No. 26768. First Dist., Div. Three. June 22, 1971.]

SALLY RENDAK et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Boccardo, Blum, Lull, Niland, Teerlink & Bell, Edward J. Niland and Stanley A. Ibler, Jr., for Plaintiffs and Appellants.

E. Robert Wallach and William B. Boone as Amici Curiae on behalf of Plaintiffs and Appellants.

Thomas C. Lynch and Evelle J. Younger, Attorneys General, Robert L. Bergman and Wayman M. Robertson, Jr., Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**DRAPER, P. J.**—This wrongful death action was tried against defendant state only. Nonsuit was granted at the close of plaintiffs' case and plaintiffs' appeal from the ensuing judgment.

The state owns and operates Brighton Beach Park in Santa Cruz County. The park includes some 64 acres. Administrative offices, staff residence, a parking area and other incidental facilities are located on a plateau well above the beach. Below, along the ocean front, is an area of sandy beach which is the principal recreational attraction. West of the sandy beach, but still within state ownership, is a finger of land which runs beneath a steep cliff rising some 72 feet above the water. At high tide, this finger is wholly submerged, but at lower tides becomes a narrow strip of wet land.

At its easterly end, where the beach area ends and this narrow finger begins, is a sign reading "Submerged at High Tide," and another reading "Slide Area." The cliff and the narrow finger below it extend to the westerly limit of the state park. Along the sandy beach to the east, the only improvements are rest rooms and some "fire rings"—circles of concrete set in the sand for building of fires. A rest room appears to be the nearest improvement to the site of the fatal accident here involved, and it is some 650-900 feet from the accident site.

The Rendaks were visitors from out of state. On July 16, 1967, the family went to the beach with friends. Decedent and the other three men

of the party walked from the beach area to the narrow finger of land and then along it directly beneath the cliff. A portion of the cliff area slipped into the sea, killing Mr. Rendak.

The motion for nonsuit was made and granted upon two grounds. We need consider but one of these, the absolute immunity granted by Government Code section 831.2.[1] That section provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach."

■ Appellants' argument, both to the trial court and here, is that the existence of improvements in a public park excludes the entire park, including wholly unimproved areas thereof, from application of section 831.2. They contend that the only jury question under this section is whether any improvements existed in the park. It is, of course, undisputed that some improvements did exist. We cannot accept appellants' contention. The section specifically extends the immunity to "*any* natural condition of *any* . . . beach." Appellants' argument would demolish the immunity as to an entire park area improved in any way other than by access roads or trails, ground already specifically covered by section 831.4 An entrance gate, a parking area adjoining it, or residential provision for park employees would wholly destroy the immunity. Appellants' position would be entirely sound if the section had been adopted as originally recommended by the Law Revision Commission (Law Rev. Com., 1963 Recommendation Relating to Sovereign Immunity, p. 852). But the legislative modifications clearly demonstrate a contrary view. We, of course, deal with the statute as adopted, and not with the earlier version suggested to and rejected by the Legislature. It follows that improvement of a portion of a park area does not remove the immunity from the unimproved areas. We reject also the state's contention that any improvement, however remote and distinct from the source of danger, renders the entire park immune to suit, and its unstated corollary that the only actionable injury is one directly caused by a defect in some man-made improvement.

This conclusion disposes of the argument advanced by counsel. The dissenting opinion, however, turns upon a view not advanced—that the record here raises a question of fact for jury determination as to whether the unimproved danger area is "within and can be said to be a part of the

---

[1]The other ground was that defendant did not have either actual or constructive notice of the existence of a dangerous condition during the dry season. This issue, however, is almost always one of fact for the jury. Here there is evidence, including the year-round maintenance of the warning signs, which would at least support an inference of notice. Hence we consider only the other ground which, if sound, fully supports the nonsuit.

improved area," and thus outside the immunity extended by section 831.2. We cannot agree. Here, the natural and unimproved area is shown by the evidence and the aerial photograph to be separate, distinct and remote from the improved portions, and thus clearly within section 831.2. We are more persuaded to this conclusion by omission of that argument from the trial or appellate presentations of the able and experienced counsel representing plaintiffs, long attuned to the value of opposing nonsuit by suggesting the existence of fact issues. Their adoption of an all or nothing argument on immunity under section 831.2 reinforces our view that there is no true fact question on that issue here. The legislative committee report has declared that the exemption granted by this section is "absolute." While there may well be cases which present such a fact issue, we should not lightly dilute the absolute exemption by finding a jury issue where none truly exists.

Judgment affirmed.

Caldecott, J., concurred.

**BROWN (H. C.), J.**—I dissent.

I agree with the majority of this court that the sufficiency of the evidence of either actual or constructive notice of the dangerous condition of the cliff is an issue for the jury.

I disagree only with the holding that as a matter of law the evidence conclusively disclosed that Rendak's death was caused by a slide of land in its natural condition on an unimproved area of the park so as to come within the immunity provisions of Government Code section 831.2.

It is to be noted at the outset that when reviewing a judgment after nonsuit the appellate court " 'must view the evidence in the light most favorable to the appellant, must disregard all inconsistencies and draw only inferences from the evidence which can reasonably be drawn which are favorable to the appellant.' " (*Sperling* v. *Hatch*, 10 Cal.App.3d 54, 57 [88 Cal.Rptr. 704]; *Golceff* v. *Sugarman*, 36 Cal.2d 152, 153 [222 P.2d 665].)

Government Code section 831.2 provides: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any *lake, stream, bay, river or beach.*" (Italics added.)

This statutory immunity has not as yet been interpreted by any court. The legislative committee comment is quoted as follows: "This section [Gov. Code, § 831.2] provides an absolute immunity from liability for

injuries resulting from a natural condition of any unimproved public property. Thus, for example, under this section and Section 831.4, the State has an absolute immunity from liability for injuries resulting from natural conditions of a state park area where the only improvements are recreational access roads (as defined in Section 831.4) and hiking, riding, fishing and hunting trails. . . ."

Appellants and the state urge opposite views on the question as to whether the park improvements extend to that particular part of the park where the accident occurred.

The state cites Van Alstyne, California Government Tort Liability, which suggests that even an improved beach (with comfort stations, parking facilities, etc.) may have natural property containing hazards undisturbed by the improvements which are nonactionable.

To support his contention that the entire beach portion of the park, including the cliff area, should be considered improved, appellants cite cases where property was considered improved for certain purposes when only a portion was actually improved. (*Hopkins* v. *Roach,* 127 Ga. 153 [56 S.E. 303]; *Builders Land Company* v. *Martens,* 255 Iowa 231 [122 N.W.2d 189].)

Appellants' position could lead to the situation wherein the immunity of section 831.2 could not apply where a few maintenance improvements have been constructed in a huge state park containing a vast variety of natural recreational areas which have been maintained in their primitive state. This illogical extreme is not in accord with the legislative policy expressed in the legislative comment. The policy is to permit the public to use primitive regions of the state without unduly burdening the state with the expenses relevant to public safety which can arise from such use. (See legislative comment, fn. to Gov. Code, § 831.2.) *County of Los Angeles* v. *Frisbie,* 19 Cal.2d 634, 644 [122 P.2d 526], states: "Wherever possible, a statute is to be construed in a way which will render it reasonable, fair and harmonious with its manifest purpose, and which will conform with the spirit of the act. [Citation.] 'Therefore,' as is stated in *People* v. *Merrill,* 24 Cal.App. 206, 210 [140 Pac. 1075], 'when a suggested construction of a statute in any given case necessarily involves a decided departure from what may be fairly said to be the plain purpose of the enactment, such construction will not be adopted to the exclusion of a possible, plausible interpretation which will promote and put in operation the legislative intent.' "

The state's position, however, could also lead to an unreasonable situation wherein the state would not be liable for injuries occurring from any

natural growth or natural object anywhere on property owned or controlled by it and would limit its liability to man-made structures. We do not believe that it was intended that Government Code section 831.2 be so construed.

It is to be particularly noted that section 831.2 refers to immunity from liability for injuries caused by a "natural condition of *any unimproved public property.*" (Italics added.) It does not provide immunity caused by *natural conditions alone,* or for natural conditions in *improved* public property areas.

To avoid the extremes which would result from following the theory of either the state or the appellants, we adopt the view that whether the natural condition which caused the accident is a part of the improved area or falls within the immunity provisions of Government Code section 831.2 will depend upon the facts of each particular case.

When an area has been improved, it must be determined by the trier of fact whether the natural hazard is within and can be said to be a part of the improved area unless the evidence is so clear that it can be said as a matter of law that the issue is one for the trial judge. The New Brighton Beach Park is not an area with primitive or pristine conditions distant from improvements. It is a relatively small parcel that has been improved as a recreational area. The improvements that may be put on a beach are necessarily limited as it is the beach and ocean, rather than a structure, that is sought for recreation. The improvements here, for which an admission fee was charged, are adequate for a beach and may be termed improvements. There were the barbecue pits, rest rooms, garbage disposal facilities and signs which permitted patrons to walk near the cliff but gave warning of the danger. The entire beach, including the cliff area, was within the inspection zone protected by the supervision of state employees. There was ample evidence to support a finding that the cliff area was part of improved property.

It is, therefore, concluded that there was sufficient evidence to submit to jury determination the issue of (1) whether there was actual or constructive notice of a dangerous condition, and (2) whether the hazardous cliff was a part of the improved area so as not to come within the provisions of Government Code section 831.2.

I would, therefore, rule that the judgment following the grant of the nonsuit be reversed.

A petition for a rehearing was denied July 22, 1971. Brown (H. C.), J., was of the opinion that the petition should be granted. Appellants' petition for a hearing by the Supreme Court was denied September 2, 1971. Peters, J., was of the opinion that the petition should be granted.