[Civ. No. 35511. First Dist., Div. Four. Feb. 25, 1976.]

SCOTT W. BAKER, Plaintiff and Appellant, v.
CHRYSLER CORPORATION, Defendant and Respondent.

**COUNSEL**

Lewis, Rouda & Lewis, Lewis & Rouda, Marvin E. Lewis and Eduardo
M. Xavier for Plaintiff and Appellant.

Robert E. Cartwright, Edward I. Pollock, Arne Werchick, Sanford M. Gage, Ned Good, David B. Baum, Stephen I. Zetterberg, Robert G. Beloud and Leonard Sacks as Amici Curiae on behalf of Plaintiff and Appellant.

Crosby, Heafey, Roach & May, Edwin A. Heafey, Jr., Peter W. Davis and Kenneth F. Johnson for Defendant and Respondent.

**OPINION**

**CHRISTIAN, J.**—Scott W. Baker appeals from a judgment which was rendered after a jury returned a defense verdict in this action for personal injuries suffered by appellant when he was struck by an automobile which had been manufactured by respondent Chrysler Corporation.

On December 26, 1966, appellant was walking in the street near his home in Brisbane. It was about 6:30 p.m., and very dark. Appellant was walking up the street, facing the oncoming traffic, when a 1967 Dodge, with its headlights turned on, approached at about 35 miles per hour. Appellant turned and tried to cross the street in front of the approaching automobile. The driver swerved to the left into the oncoming traffic lane and braked, but was unable to avoid appellant. The speed of the car at the point of impact was approximately 20 to 25 miles per hour. Appellant was struck on his upper leg by the aluminum molding around and above the headlight of the car, and suffered serious injuries. It was appellant's theory at trial that his injuries had been increased by defects in the design of the front part of the car.

Conceptual design work on the car was completed in April 1963, and the engineering design work was completed in April 1965. There was conflicting evidence as to whether, in designing the front end of the automobile, Chrysler engineers had given adequate attention to the prevention of trauma to pedestrians who might be involved in collisions. The front end was designed with certain protruding metal in order to protect the headlights from damage; while other designs could have been used to protect the front headlights, there was testimony that there was no design or material which would have caused less injury to pedestrians than that which was actually used.

Appellant contends that the trial court erred in giving an instruction which defined "defect." The court instructed the jury: "A defective design is one which proximately causes or increases foreseeable and unnecessary injury to the user or to another in the course of the intended use of the product if the product can reasonably be designed and produced for its intended purpose without causing or increasing injury to the user or to another." ■ Manufacturers and designers of products are strictly liable in tort for injuries caused by their products when four elements are present: (1) the product is placed on the market; (2) there is knowledge that it will be used without inspection for defects; (3) the product proves to have a defect; and (4) the defect causes injury to a human being. (*Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 62 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049]; see also *Luque* v. *McLean* (1972) 8 Cal.3d 136, 141 [104 Cal.Rptr. 443, 501 P.2d 1163].) ■ Strict liability extends not only in favor of the users and consumers, but also in favor of bystanders such as pedestrians. (*Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578, 585-587 [75 Cal.Rptr. 652, 451 P.2d 84]; *Preissman* v. *Ford Motor Co.* (1969) 1 Cal.App.3d 841, 855 [82 Cal.Rptr. 108].) ■ While an injured plaintiff is not required to prove that the defect made the product unreasonably dangerous (*Cronin* v. *J.B.E. Olson Corp.* (1972) 8 Cal.3d 121, 134-135 [104 Cal.Rptr. 433, 501 P.2d 1153]), it must be proved that a defect existed in the design or manufacture of the product. (*Id.,* at p. 133; see also *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 120 [120 Cal.Rptr. 681, 534 P.2d 377].)

Appellant first asserts that the word "defect"—in the context of defective design—should not have been defined by the court at all. ■ But if a correct definition is given, it is not error for the court to assist the jury by defining the terms used in the instructions. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 216, p. 3033.)

Appellant next asserts that the definition given by the court was incorrect in that it placed upon him a burden of proof inconsistent with the applicable law. The word "defect" is not capable of precise definition in all cases; "no definition [of defect] has been formulated that would resolve all cases or that is universally agreed upon." (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 383 [93 Cal.Rptr. 769, 482 P.2d 681]; *Self* v. *General Motors Corp.* (1974) 42 Cal.App.3d 1, 6 [116 Cal.Rptr. 575].) The court in *Jiminez* noted three lines of cases which defined the word "defect" differently: (1) the failure to match the quality of most similar products, or the "deviation-from-the-norm" test; (2) the "unreasonably dangerous" test; (3) the "unfit for ordinary purpose" test. (4 Cal.3d at p. 383-384.) However, in reviewing the cases, the court implied

that the proper definition of defect varies from case to case, and that even these three common lines of tests for the existence of a defect are not exhaustive.

The first part of the definition given by the trial court, "a defective design is one which proximately causes or increases foreseeable and unnecessary injury to the user or to another," does not by itself constitute an adequate definition of "defect." "[A] product need not be found defective simply because an accident has occurred." (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 676 [117 Cal.Rptr. 1, 527 P.2d 353].) ■ The question presented to the jury was whether an alternative design of the front end of the Dodge automobile would have mitigated or eliminated the injuries suffered by appellant. But the reasonableness of an alternative design—whether the design can actually be produced, the materials for production are available, the costs are not prohibitive, etc.—is a factor to be considered in determining whether the design which was actually used can be characterized as defective. (See *Self* v. *General Motors Corp., supra,* 42 Cal.App.3d at p. 7.) Requiring an injured plaintiff who seeks damages against a manufacturer on the basis of strict liability in tort for a defective design to show that alternative designs for the product could reasonably have been developed does not enlarge plaintiff's burden of proof. An injured plaintiff has always had the burden to prove the existence of the defect. The reasonableness of alternative designs, where a design defect is claimed, is part of that burden. (*Lolie* v. *Ohio Brass Company* (7th Cir. 1974) 502 F.2d 741, 744; *Olson* v. *Arctic Enterprises, Inc.* (D.N.D. 1972) 349 F.Supp. 761, 764-765; see also *Dreisonstok* v. *Volkswagenwerk, A.G.* (4th Cir. 1974) 489 F.2d 1066, 1073; *McClung* v. *Ford Motor Co.* (S.D.W.Va. 1971) 333 F.Supp. 17, 21 [cert. den., 412 U.S. 940 (37 L.Ed.2d 400, 93 S.Ct. 2779)].) ■ Strict liability in tort is not a doctrine which places upon the producer absolute liability for all injuries which result from the use of a product; rather, the purpose of strict liability "is to insure that the costs of injuries resulting from defective products are borne by the [producers] that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 63.) ■ Therefore, it was proper for the court to define "defect" in such a way as to place the burden upon the injured plaintiff of establishing that reasonable alternative designs are possible.

Appellant contends that the court's instruction on assumption of risk was erroneous and should not have been given in any form. The court instructed: "There is a limited and restricted form of conduct on the part

of a plaintiff which, if you find to have occurred, will relieve a defendant from liability for damages caused by a defect or defects in its product: this conduct embraces your finding that plaintiff had actual knowledge of the specific defect or defects and knowingly, voluntarily moved his body into a position where it might be impacted by the defective part or parts of the vehicle."

Appellant asserts that the evidence did not support the giving of any instruction on assumption of the risk. ■ So long as there is any substantial evidence to support a theory advanced by a party, the court is justified in giving an instruction upon that theory. (*Rodriquez* v. *Lompoc Truck Co.* (1964) 227 Cal.App.2d 769, 775 [39 Cal.Rptr. 117]; *Chapman* v. *Reliance Equipment Co.* (1963) 214 Cal.App.2d 221, 224 [29 Cal.Rptr. 500]; *Ziegler* v. *Santa Cruz etc. School Dist.* (1961) 193 Cal.App.2d 200, 203 [13 Cal.Rptr. 912].) The issue of assumption of the risk is a question of fact for the jury to determine. (*Sperling* v. *Hatch* (1970) 10 Cal.App.3d 54, 62 [88 Cal.Rptr. 704].) "[T]he elements of the defense of assumption of risk are a person's knowledge and appreciation of the danger involved and his voluntary acceptance of the risk." (*Prescott* v. *Ralphs Grocery Co.* (1954) 42 Cal.2d 158, 162 [265 P.2d 904].) While evidence of *actual* knowledge is required (*Dorsic* v. *Kurtin* (1971) 19 Cal.App.3d 226, 234 [96 Cal.Rptr. 528]), actual knowledge of the risk may be inferred from the circumstances of the case. (*Gomes* v. *Byrne* (1959) 51 Cal.2d 418, 421 [333 P.2d 754]; *Chapman* v. *Reliance Equipment Co., supra,* 214 Cal.App.2d at p. 224; *Ziegler* v. *Santa Cruz etc. School Dist., supra,* 193 Cal.App.2d at p. 203.) There was evidence that the accident occurred on a dark, clear evening. The Dodge's headlights were on, and there was a clear view of the street for 200 to 300 feet from the scene of the accident. Appellant was walking up the side of the street facing the direction from which the Dodge was coming. Appellant turned and jogged across the street directly into the path of the Dodge and was struck by it. From this evidence, the jury could have concluded that appellant knew the Dodge was approaching and that by jogging across the street directly in the path of the Dodge he voluntarily accepted the risk of being struck by it. Therefore, the evidence justified an instruction putting to the jury the question whether appellant had assumed the risk that he would be struck by the Dodge.

However, the instruction given by the court required a finding by the jury that the plaintiff had actual knowledge of the alleged defect in the Dodge automobile, not actual knowledge that he was assuming the risk of being struck by the car. Appellant's theory at trial was that the alleged defect did not cause the accident, or the initial injury to appellant, but

rather the defect *increased* the injuries suffered by appellant due to the accident. But assumption of the risk does not require "the clairvoyance to foresee the exact accident and injury which in fact occurred." (*Sperling* v. *Hatch, supra,* 10 Cal.App.3d at p. 61.) The only knowledge required is that an injured plaintiff be aware that he is placing himself in danger. (*Id.*) The instruction, by requiring actual knowledge of the defect on the part of appellant rather than only knowledge that he was placing himself in danger of being struck by the automobile and injured, placed upon respondent the burden of proving more knowledge than was actually necessary to establish the defense; the instruction was therefore erroneous in that respect. Because the error unjustifiably increased the burden of proof upon respondent, it was not prejudicial to appellant. (See Cal. Const., art. VI, § 13.)

■ Appellant also asserts that the instruction as given was a misstatement of the law, and that the jury should have been instructed that appellant had to appreciate the magnitude of the risk before assuming the risk and also that appellant must have acted unreasonably in assuming that risk. The doctrine of assumption of the risk requires that the injured plaintiff not only have general knowledge that he is placing himself in danger, but that he must have knowledge of the particular danger to which he is exposing himself. (*Vierra* v. *Fifth Avenue Rental Service* (1963) 60 Cal.2d 266, 274 [32 Cal.Rptr. 193, 383 P.2d 777].) An alternative means of stating this requirement is to say that the plaintiff must have "knowledge of the magnitude of the risk involved." (*Id.,* at p. 271.) This alternative phrasing is synonymous with the requirement that the plaintiff must have actual rather than general knowledge of the danger to which he is exposing himself; it does not constitute an additional element of which the jury must be instructed. The court instructed the jury that, for the doctrine of the assumption of the risk to apply, appellant was required to have actual knowledge of the particular risk; therefore, the instruction properly stated the knowledge requirement for the application of the doctrine.

The court also instructed the jury that the only other element required for application of the doctrine of assumption of the risk was that appellant "knowingly, voluntarily" placed himself in danger. ■ The mere voluntariness of appellant's act, once actual knowledge has been shown, will not alone establish assumption of the risk; that act must be both voluntary and unreasonable under the circumstances of the case. (*Luque* v. *McLean, supra,* 8 Cal.3d at p. 145; see also *Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d at p. 672.) There was evidence from which the jury could have concluded that appellant's act in crossing

the street directly in front of the approaching Dodge was both voluntary and unreasonable. Nonetheless, in light of the fact that the court failed to instruct the jury that unreasonableness was required in addition to voluntariness, it appears reasonably probable that the jury may have been misled into applying the doctrine of assumption of risk without considering the unreasonableness of appellant's action in light of the circumstances of this case. Appellant now claims that no instruction concerning assumption of risk was required; yet he offered an instruction requiring that appellant "knowingly and voluntarily placed his body in front of an approaching automobile." The offered instruction omitted any reference to "reasonableness," but was otherwise virtually identical with the instruction given. ▆ Where an appellant has requested that an instruction be given and either that instruction or one substantially similar to it is in fact given, he cannot be heard to assert the giving of that instruction as a ground for reversal. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 266-267, pp. 4257-4258.)

Appellant asserts that assumption of the risk is a defense which is applicable only against users or consumers of the product in strict liability cases, and is inapplicable to bystanders who are injured by the defective product. ▆ The public policy which enforces strict liability for manufacturing and design defects in favor of consumers and users also applies to bystanders. (*Elmore* v. *American Motors Corp., supra,* 70 Cal.2d at p. 586.) But even bystanders are subject to the defense of assumption of risk. (*Morton* v. *California Sports Car Club* (1958) 163 Cal.App.2d 685, 687 [329 P.2d 967].) Here, the alleged defective design of the front end of the Dodge obviously did not cause the accident in which appellant was injured. Appellant's sole contention is that his injuries were aggravated by the defective design and could have been materially less severe with a nondefective design. But the risk arguably assumed by appellant was not what the extent of his injuries would be, whether the design of the front end of the car was defective or not; the risk was that appellant would be struck and injured. The fact that appellant was neither a consumer nor a user of the auto, which only incidentally had an alleged defectively designed front end, has no bearing on any risk assumed by him. It was therefore proper to instruct on assumption of risk.

The judgment is affirmed.

Rattigan, Acting P. J., Emerson, J.,* concurred.

A petition for a rehearing was denied March 17, 1976, and appellant's petition for a hearing by the Supreme Court was denied April 22, 1976.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.