### LAKE LAND COMPANY ET AL. *v.* STATE OF INDIANA, EX REL. ATTORNEY GENERAL.

[No. 9,990. Filed November 19, 1918.]

1. ATTORNEY-GENERAL.—*Right to Sue in Name of State.*—*Statutes.* —Under §9269 Burns 1914, Acts 1889 p. 124, and §9270 Burns 1914, Acts 1899 p. 219, providing that the Attorney-General shall prosecute all suits brought by the state, the Attorney-General has such an interest in the subject-matter of an action by the state to enjoin the removal of sand and gravel out of Lake Michigan within the state as to authorize the bringing of such action on his relation. p. 442.

2. NAVIGABLE WATERS.—*Lands Under Water.*—*Right to Use.*— *Rights of Citizens of Other States.*—The right of a state in and under the waters of Lake Michigan within the state is a holding in trust for the people of the state as a whole, and they may use such lands so long as they do not interfere with their use by other citizens, but that privilege does not extend to citizens of another state or to foreign corporations. p. 443.

3. NAVIGABLE WATERS.—*Lands Under Water.*—*Grants.*—*Powers of State.*—The state in its sovereign capacity is without power to convey or curtail the rights of its people in lands under Lake Michigan within the boundaries of the state. p. 446.

4. NAVIGABLE WATERS.—*Removal of Land Under Water.*—*Action by*

*State to Enjoin.—Complaint.—Sufficiency.*—In an action by the state on the relation of its Attorney-General to enjoin the removal by a foreign corporation of sand from the bed of Lake Michigan within the boundaries of the state, the complaint, although not alleging that any damage would result to plaintiff by the removal of the sand, but averring that the deposits of sand and gravel being removed were valuable in the market and stating the fair .market value thereof, *held* sufficient to state a cause of action. pp. 446, 447.

5. INJUNCTION.—*Trespass.—Right to Enjoin.—Irreparable Injury.* —An action for an injunction cannot be successfully maintained to restrain or prevent the commission of a mere trespass unless it is made to appear that the injury apprehended therefrom will be great or irreparable. p. 446.

6. NAVIGABLE WATERS.—*Lands Under Water.—Removal.—Right to Enjoin.—"Purpresture."*—In an action by the state to enjoin the removal of sand and gravel from the bed of Lake Michigan within its borders, the complaint is not aided by the doctrine of purpresture, since a purpresture signifies an encroachment to the exclusion of others, or a permanent obstruction, whereas the trespass alleged was a temporary use by anchoring vessels for dredging. p. 447.

From Lake Superior Court; *Virgil S. Reiter,* Judge.

Action by the State of Indiana, on the relation of the Attorney-General, against the Lake Sand Company and others. From a judgment for relator, the defendants appeal. *Affirmed.*

*Gavit, Hall & Smith* and *John A. Gavit,* for appellants.

*Evan B. Stotsenburg,* ·Attorney-General, *Peter Crumpacker, Fred C. Crumpacker, Charles Crumpacker* and *Harry B. Tuthill,* for appellee.

IBACH, J.—The State of Indiana by and on the relation of its Attorney-General brought this action to enjoin appellants from taking sand and gravel out of the bed of Lake Michigan within the boundaries of this state.

The questions presented by the record arise out of the overruling of appellant's separate demurrer for want of facts to the substituted complaint, hereinafter referred to as the complaint.

The complaint is long. The introductory statement reads: "The plaintiff, State of Indiana, by and on the relation of its Attorney-General, Evan Stotsenberg, for substituted complaint complains," etc. Other material facts bearing on the questions presented are in brief as follows: Under the waters of Lake Michigan within the boundaries of this state there are large deposits of sand and gravel, which are valuable in the market. The appellants are foreign corporations domiciled in the State of Illinois. For several years they have been committing daily trespasses on plaintiff's lands, under the waters of Lake Michigan, by going thereon and severing therefrom the sand and gravel deposits in the bed of the lake. Such sand and gravel as it lay on the bed of the lake was at the time of its removal of the fair market value of three cents a cubic yard. The sand and gravel was removed by the appellants by means of dredges, loaded in barges and conveyed to the city of Chicago, where it was sold on the market. It is further alleged that appellants will continue to commit daily trespasses upon such lands and continue to take sand and gravel therefrom unless enjoined from so doing; that it is impossible to estimate the damage that will result from such trespasses, and they would result in numerous law suits; that the remedy at law would be inadequate.

Among the objections set out in the memorandum accompanying the demurrer are the following: "3. The said complaint shows that the relator has no in-

terest in the subject-matter of this action. 4. Said complaint shows that if any right of action exists, it exists in the State of Indiana as plaintiff and not in the Attorney-General of said state.''

We are inclined to treat these objections as technical rather than substantial, in view of the nature of the action and the theory upon which the complaint is drawn. The word ''plaintiff'' wherever found in the complaint is in the singular number, and thus signifies that there is but one plaintiff, and the introductory statement heretofore set out shows that the plaintiff making complaint is the ''State of Indiana.'' But if we are wrong in this assumption, the statute (§§9269, 9270 Burns 1914; Acts 1889 p. 124, Acts 1899 p. 219) would seem to create such interest in the Attorney-General as would authorize the action to be brought on his relation. Section 9269, *supra,* makes it mandatory upon the Attorney-General to prosecute and defend all suits that may be instituted by or against the State of Indiana, the prosecution or defense of which is not otherwise provided by law, while §9270, *supra,* provides: ''That the attorney general shall have charge of and prosecute all civil actions which shall hereafter be brought, either in the name of the State of Indiana, or in the name of the State of Indiana on relation of the attorney general, or on the relation of any state board created by general law.'' See *State, ex rel.* v. *Insurance Co.* (1888), 115 Ind. 257, 17 N. E. 574; *McCaslin* v. *State, ex rel.* (1873), 44 Ind. 151; *State* v. *Ohio Oil Co.* (1898), 150 Ind. 21, 49 N. E. 809, 47 L. R. A. 627.

In the case first cited the court uses this language: ''We do not doubt the power and authority of the attorney general to commence the action now before

us (action to recover fees from foreign insurance company) and prosecute it to a final determination in the name of the State of Indiana upon his own relation, or *ex rel.* the auditor of state, or without any relator." And in *State* v. *Johnson, Admr.* (1875), 52 Ind. 197, it was held that, where a cause of action exists in favor of the state, and the action is brought in the name of the state for a certain specified use, the words designating such use will be considered as surplusage, and the action will be regarded as an action properly brought by the state. The complaint is sufficient as against such objections.

It is further insisted that, as the complaint does not show that the appellants were removing the sand and gravel from the bed of the lake to the exclusion of others, they are doing no more than they are entitled to do, and the complaint shows no grounds for equitable interference. It thus becomes necessary to determine the nature of the title of the state to the bed of Lake Michigan lying within its border. Appellants in effect concede that such land is held by the state in trust for the people as a whole, and the property so held in trust is common property of all, from which all may partake so long as in the taking none attempt to deprive others of a like privilege, but contend that it is held for the benefit of *all,* including appellants, and that until the state regulates the method of taking common property there can be no restraint or regulation, except only the power in the trustee to prevent the appropriation by one to the exclusion of others.

In *Sloan* v. *Biemiller* (1878), 34 Ohio St. 492, with reference to the nature of the title of the state to the subaqueous land of Lake Erie, it was said: "Al-

though the dominion over and the right of property in the waters of the sea and its inland waters were, at common law, in the crown, yet they were of common public right for every subject to navigate upon and to fish in, without interruption.  *  *  *  They were regarded as the inherent privileges of the subject, and 'classed among those public rights denominated *jura publica,* or *jura communia,* and thus contradistinguished from *jura coronae,* or private rights of the crown.' * * * The sovereign was the proprietor of these waters, as the representative or trustee, of the public.  In this country the title is vested in the states upon a like trust, subject to the power vested in Congress to regulate commerce." See *Martin* v. *Waddell* (1842), 16 Pet. 367, 412, 10 L. Ed. 997, 1013; *McCready* v. *Virginia* (1876), 94 U. S. 391, 24 L. Ed. 248; *State* v. *Cleveland, etc., R. Co.* (1916), 94 Ohio St. 61, 113 N. E. 677, L. R. A. 1917A 1007; *People* v. *Kirk* (1896), 162 Ill. 138, 45 N. E. 830, 53 Am. St. 277; *Rossmiller* v. *State* (1902), 114 Wis. 169, 89 N. W. 839, 58 L. R. A. 93, 91 Am. St. 910; *State* v. *Rodman* (1894), 58 Minn. 393, 59 N. W. 1098.  We must conclude from our examination of the adjudged cases that the term "all" and words of similar import as used in the American cases have reference to the people of the individual state as distinct from the nation.

In *People* v. *Kirk, supra,* cited by appellants, the court uses the following language: "The legislature represents not only the state, which holds the title which at common law was vested in the crown, but the legislature also represents the public, for whose benefit the title is held, and in that capacity it possesses the sovereign power of parliament over the

waters of the lake and the submerged lands covered by the waters.''

In *Rossmiller* v. *State, supra,* also cited by appellants, involving the validity of a statute prohibiting the cutting of ice in the navigable waters of Wisconsin for shipment beyond its borders, the court said: ''The title to the beds of such (navigable) lakes is in the state, but not for its own use as an entity. The mere naked legal title rests in the state, but the whole beneficial use thereof, including the use of the ice formed thereon, is vested in *the people of the state as a class.''*

In *Ex parte Powell* (1915), 70 Fla. 363, 372, 70 South. 393, the court uses this language: ''Among the rights thus acquired by the State of Florida is the right to own and hold the lands under navigable waters within the state including the shores or space between ordinary high and low water marks, for the benefit of *the people of the state, * * *.* When the Constitution of the United States became operative, the several states continued to hold the title to the beds of waters within respective borders that were navigable in fact without reference to the tides of the sea, not for purposes of disposition to individual ownerships, but such title was held in trust for all *the people of the states respectively,''* etc.

In *Southern Sand, etc., Co.* v. *State, ex rel.* (1915), 121 Ark. 1, 180 S. W. 219, the court said: ''The state holds the beds of the navigable streams for the common use of *her citizens.''* (Our italics throughout.)

The appellants are foreign corporations, and are not citizens within the meaning of the Constitution when it declares that the citizens of each state shall be entitled to the privileges and immunities of citi-

zens of the several states. *Pembina Mining Co.* v. *Pennsylvania* (1888), 125 U. S. 181, 8 Sup. Ct. 737, 31 L. Ed. 650; Art. 4, §19, U. S. Constitution.

The state in its sovereign capacity is without power to convey or curtail the right, of its people in the bed of Lake Michigan (*State* v. *Cleveland, etc., R. Co., supra*), and, as the appellants are foreign corporations, it follows that their entering upon the lands described and the removal of the sand and gravel therefrom is without right.

It is further insisted that the complaint does not show that the plaintiff has sustained any damages by reason of the acts of defendants alleged in the complaint, or that it will sustain any damages by reason of the continuation hereafter of such acts, and that a mere naked trespass which can do no damage cannot be enjoined. This objection to our minds presents the most serious question. It is not claimed or alleged in the complaint that any damage will result to the plaintiff by the removal of the sand and gravel by the appellants, but it is argued by appellee that the state may sell this material to produce a fund that can be used for beneficial purposes to her citizens, and hence she has the right, and her administrative department has the right, to prevent by injunction the taking thereof without alleging or proving damages; that damages are presumed.

The rule seems to be well settled in this state that an action for an injunction cannot be successfully maintained to restrain or prevent the commission of a mere trespass unless it is made to appear that the injury apprehended therefrom

will be great or irreparable. *Wabash R. Co. v. Engleman* (1902), 160 Ind. 329, 331, 332, 66 N. E. 892, and cases cited. Neither is the complaint aided by the doctrine of purpresture, as a purpresture means more than a mere temporary anchorage of vessels while loading; it signifies an inclosure or encroachment to the exclusion of others. A purpresture is any permanent or habitual obstruction of a public street, although room enough be left to pass. *Hoey* v. *Gilroy* (1891), (N. Y. Com. Pl.) 14 N. Y. Supp. 159, 161. See, also, *State* v. *Kean* (1896), 69 N. H. 122, 45 Atl. 256, 48 L. R. A. 102; *Mayor* v. *Jaques* (1860), 30 Ga. 506, 512; *People* v. *Park, etc., R. Co.* (1888), 76 Cal. 156, 18 Pac. 141.

The complaint does allege, however, that the deposits of sand and gravel that are being removed by appellants are valuable in the market, and that as they lay on the bed of the lake at the time of their removal such sand and gravel was of the fair market value of three cents a cubic yard. These facts for the purposes of the demurrer must be taken as true, and, when considered as a whole, we are of the opinion that the complaint states a cause of action.

Judgment affirmed.

NOTE.—Reported in 120 N. E. 714. Ownership of bed of lakes or ponds, 18 L. R. A. 695, L. R. A. 1916C 150. See under (2, 3) 29 Cyc 356, 357.