**Judith GARNER, Administratrix of the Estate of Joseph J. Fernandez, Deceased, Plaintiff,**

**v.**

**CITY OF MICHIGAN CITY, a Municipal Corporation, the Michigan City Department of Parks and Recreation, a Municipal Corporation of the State of Indiana, Defendants.**

**No. S 77–129.**

United States District Court, N. D. Indiana, South Bend Division.

May 12, 1978.

Harry A. Psimos, Merrillville, Ind., Joseph A. Rosin, Chicago, Ill., Thomas R. Bullard, East Chicago, Ind., for plaintiff.

Craig V. Braje, Michigan City, Ind., Vincent P. Campiti, South Bend, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The complaint alleges that Joseph J. Fernandez drowned in the waters of Lake Michigan on or about July 29, 1976, after entering those waters from the Washington Park Beach in the City of Michigan City, Indiana. Defendants admit that the City of Michigan City is a municipal corporation existing under and by virtue of the laws of the State of Indiana. Defendants' answer denies that the Michigan City Department of Parks and Recreation is a separate corporate entity since it is a department of the City of Michigan City. However, the distinction has no bearing or relevance with reference to the issues raised by this motion, and, for purposes of this motion, the allegations in the complaint in this respect may be considered as true.

It is undisputed that the plaintiff's decedent drowned in the waters of Lake Michigan.

The only material fact pertinent to the issues raised by this motion is the fact that plaintiff's decedent drowned in the waters of Lake Michigan. Since there is no dispute about this fact, and since this is the only fact material to the issues raised by this motion, there is no genuine issue as to any material fact.

IC 34–4–16.5–3 immunizes the City of Michigan City from liability in connection with the claims asserted herein. The above statute is part of the Tort Claims Act which was enacted in 1974 in the State of Indiana. Certain amendments, including Subsection 11 of the above section, were added in 1976 and became effective February 18, 1976, which was prior to the date of the drowning in this case (See Acts 1976, P.L. 140, Section 2, P. 687). IC 34–4–16.5–3 in relevant part reads as follows:

"Immunity from Liability.—A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from:

(1) the natural condition of unimproved property; . . . (11) failure to make an inspection, or making an inadequate or

negligent inspection, of any property, other than the property of a governmental entity, to determine whether the property complied with or violates any law or contains a hazard to health or safety;
. . ."

The drowning occurred in the waters of Lake Michigan. The City of Michigan City has no title to either the waters of Lake Michigan or the bed of Lake Michigan. Accordingly, by virtue of Subsection (11) of 34–4–16.5–3 set forth above, the City of Michigan City cannot be liable for any failure to inspect and warn about the dangerous conditions with reference to the waters of Lake Michigan on the date in question because the City of Michigan City did not, and could not, own either the waters of Lake Michigan or the lake bed. In addition thereto, the drowning occurred in the waters of Lake Michigan off of the beach which constitutes a natural condition of unimproved property which, also, is in the immunity provision set forth above.

IC 34–4–16.5–2 contains pertinent definitions. Subsection (2) defines "governmental entity" as follows:

"(2) 'Governmental entity' means the state or a political subdivision of the state; . . ."

Subsection (5) of the above statute defines "political subdivision" as follows:

"(5) 'Political subdivision' means a: (i) county, (ii) township, (iii) city, (iv) town, (v) separate municipal corporation . . . (x) board or commission of one of the entities listed in clauses (i) through (ix) inclusive, of this subdivision."

The State of Indiana is defined as follows under Subsection (6) of the above statute:

"(6) 'State' means Indiana and its state agencies; and (7) 'state agency' means a board, commission, department, division, governmental subdivision including a soil and water conservation district, bureau, committee, authority, military body, or other instrumentality of the state, but does not include a political subdivision."

On the basis of the above statutes, the defendant, City of Michigan City, is a separate, political subdivision of the State of Indiana and is immune from any liability herein by virtue of these statutes.

Congress, in 1953, enacted the Submerged Lands Act whereby the federal government quit-claimed title to all lands beneath navigable waters within state boundaries to the various states, reserving in the federal government authority over such lands and waters for the purposes of navigation. See 43 U.S.C. Section 1301 et seq., especially 43 U.S.C., Section 1311 and 1312. By virtue of 43 U.S.C., Section 1301(a) the State of Indiana acquired title up to the ordinary high water mark.

Prior to the enactment of the Submerged Land Act, the State of Indiana's title and rights regarding Lake Michigan were well recognized in *Lake Sand Company v. State,* 68 Ind.App. 439, 120 N.E. 714 (1918). In this connection the following appears from the court's opinion:

"In *Rossmiller v. Wisconsin,* supra, also cited by appellants, involving the validity of a statute prohibiting the cutting of ice in the navigable waters of Wisconsin for shipment beyond its borders, the court says:

'the title to the beds of such [navigable] lakes is in the state, but not for its own use as an entity. The mere naked legal title rests in the state, but the whole beneficial use thereof, including the use of the ice formed thereon, is vested in the people of the state as a class.'

In *Ex Parte Powell,* 70 Fla. 372, 70 So. 393, the court uses this language:

'among the rights thus acquired by the state of Florida is the right to own and hold the lands under navigable waters within the state, including the shores or space between ordinary high water and low water marks, for the benefit of the people of the state . . .

When the constitution of the United States became operative, the several states continued to hold the title to the beds of waters within respective borders that were navigable in fact without reference to the tides of the sea, not for the purposes of disposition to

individual ownerships, but such title was held in trust for all the people of the states, respectively.'" (See 120 N.E. 716)

The relationship between the paramount right of the federal government regarding navigation upon navigable waters of Lake Michigan and the state's title to the bed of the lake is further amplified in *Bowes v. City of Chicago*, 3 Ill.2d 175, 120 N.E.2d 15 (1954). In that case the court states as follows:

"The State of Illinois does own the land under the waters of large lakes within its boundaries as do other States of the union. The recent so-called 'Tide Lands Act' (Submerged Lands Act, Title II, Section 3, approved May 22, 1953, 43 U.S.C.A. Section 1311 recognized and reaffirmed such title in the States. Thus, large portions of Lake Michigan, east of the City of Chicago, are within the boundaries of Illinois and are owned by the State. Constitution of 1870, Art. I, S.H.A.

A disposition of these submerged lands, by the State, is a question of the power of the State, acting as a governmental body. Any disposition of submerged lands within its boundaries by any State is subject always to the paramount right of Congress to control navigation upon the waters so far as may be necessary for regulation of commerce with foreign states and among the States of the Union

. . .

The existence of this paramount right of Congress is not a limitation on the power of disposition by the State. So long as any disposition does not interfere with the right of navigation upon those waters no Federal question is involved." (See 120 N.E.2d pp. 22 and 23)

The Supreme Court of the United States has also frequently recognized the above doctrines. For example, in *Bonelli Cattle Company v. State of Arizona*, 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973) the Supreme Court stated as follows:

"The first issue we must decide is whether the state or federal law governs this controversy. The State of Arizona claims title to the subject land by virtue of the equal-footing doctrine and the Submerged Lands Act, the basic principles of which are as follows. When the Original Colonies ratified the Constitution, they succeeded to the Crown's title and interest in the beds of navigable waters within their respective borders. As new States were forged out of the federal territories, after the formation of the Union, they were 'admitted with the same rights, sovereignty, and jurisdiction . . . as the original States possess within their respective borders' . . .

Accordingly, title to lands beneath navigable waters passed from the Federal Government to the new States, upon their admission to the Union, under the equal-footing doctrine . . .

The Submerged Lands Act of 1953 did not disturb these doctrines or their inherent limitations. The Act merely confirmed the States' pre-existing rights in the beds of the navigable waterways within their boundaries by, in effect, quit-claiming all federal claims thereto." (See 94 S.Ct. P. 522)

The nature of the plaintiff's complaint as against this defendant pertains to the alleged failure of the City of Michigan City at the place and time in question to properly determine whether or not waters in Lake Michigan were safe for swimming. The plaintiff undisputably entered those waters and drowned within the waters of Lake Michigan. On the basis of the foregoing statutes, it is clear that the City of Michigan City did not own the waters of Lake Michigan or the lake bed.

Under the Indiana Governmental Immunity Statute, the City of Michigan City is not liable for the death of the plaintiff even if, for purposes of this motion only, all of the allegations in the complaint are taken as true. The Indiana Governmental Immunity Statute as cited above immunizes the City of Michigan City for liability because the plaintiff drowned in the waters of Lake Michigan which must logically fall within the definition of the natural condition of

unimproved property. In addition thereto, and as a separate reason of non-liability, the Indiana Immunity Statute immunizes the City of Michigan City for any liability with reference to any dangers or hazards to health or safety including drowning that might have existed at the date and time of the incident in question. Under the Indiana Immunity Statute, the City of Michigan City cannot be held liable for failure to inspect the lake and to determine whether or not the conditions at the lake presented a hazard to the plaintiff's health and safety. If the City of Michigan City cannot be held liable for failure to inspect, it clearly cannot be held liable for any failure to warn, post lifeguards, post signs, etc., as alleged in plaintiff's complaint.

The purpose of the Indiana Immunity Statute was to immunize a political subdivision from liability in a case such as this. Subsection (4) of 34–4–16.5–3, although not directly pertinent, does shed light on the purpose of the Immunity Statute. Subsection 4 states that a governmental entity is not liable if a loss results from "the condition of an unpaved road, trail, or footpath, the purpose of which is to provide access to a recreation or scenic area." In this case the only function of the beach is to provide access to the waters of Lake Michigan. The purpose of the statute to immunize the City of Michigan City of any liability with reference to access to Lake Michigan is clearly evidenced by Subsections (1) and (11) of IC 34–4–16.5–3 and is further buttressed by Subsection (4).

Furthermore, under 34–4–16.5–2, the distinction between state, state agency, and political subdivision is maintained in the statute. Under the statute there is no basis for imposing any liability on the part of the political subdivision of the City of Michigan City based upon any breach of duty, either on the part of the state or a state agency. The interest of the City of Michigan City, both in law and in fact, is separate and distinct from that of the State of Indiana or a state agency of the State of Indiana.

Because there is no genuine issue as to any material fact the defendants are entitled to judgment as a matter of law. Summary Judgment is now entered for the defendants and against the plaintiff.