Sean McKENNA and John McKenna, Appellants (Plaintiffs Below),

v.

CITY OF FORT WAYNE, Indiana and City of Fort Wayne Board of Park Commissioner, Appellees (Defendants Below).

No. 4–681A39.

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1981.

Rehearing Denied Feb. 18, 1982.

Thos. M. Moorhead, Robert E. Grant, Shoaff, Parker & Keegan, Fort Wayne, for appellants.

Robert E. Kabisch, Hunt, Suedhoff, Borror, Eilbacher & Lee, Fort Wayne, for appellees.

MILLER, Presiding Judge.

Plaintiff-appellants Sean and John McKenna are appealing an adverse summary judgment rendered in favor of defendant-appellees, City of Fort Wayne, Indiana, and City of Fort Wayne Board of Park Commissioners (City). Sean was injured by a falling limb from a tree in municipally-owned Foster Park. The issue raised on appeal by the McKennas presents us with the question whether the injury was the result of a "natural condition of unimproved property" to which governmental immunity applies pursuant to section 3(1) of the Indiana Tort Claims Act, Ind.Code 34–4–16.5–1 *et seq.*[1]

For the reasons stated below we must reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## FACTS

The evidence properly before the trial court most favorable to the non-moving party (the McKennas) is as follows: In his complaint and published deposition, 13-year-old Sean McKenna alleged (without contradiction by the City) he was sitting on or standing next to a picnic table situated under a tree in Foster Park when he was injured by a limb which fell from the tree. McKenna also alleged the City had placed the table under the tree, and in his deposition he noted a playground was "within that area." The City's responses to McKenna's interrogatories reveal the tree in question was a 100-year-old hackberry which was 80 feet in height, had a base circumference of 10 feet, and whose lowest limbs were 30 feet from the ground. The City's motion for summary judgment was accompanied by an affidavit signed by the city arborist alleging facts "within his personal knowledge." Significantly, the affidavit contradictorily asserted the tree "was growing in a 'natural' or 'wilderness' area" of the park *and* that "the only maintenance of the ground beneath the tree was in the periodic mowing of the grass." Somewhat evasively, the arborist also concluded the tree itself was "in no way improved"—in part because there had been no pruning or trimming of *living* branches of the tree.

The trial court ruled the City immune from liability because McKenna's injury "resulted from the natural condition of unimproved property." IC 34–4–16.5–3(1), *supra*. In making its ruling the trial court found "the only appropriate consideration [in this case] is the condition of the tree . . . which inflicted the injury in question[;] Sean McKenna's injury resulted solely from the falling limb of the hackberry tree, which was in its natural condition and unimproved."

## DISCUSSION AND DECISION

The procedural posture of this case is McKenna's appeal from the trial court's grant of summary judgment in favor of the City. Consequently, we repeat the familiar principles of summary judgment. Summary judgment may be granted

---

1. The Act provides in relevant part: "A governmental entity or an employee acting within the scope of his employment is not liable if a loss results from: (1) the natural condition of unimproved property." IC 34–4–16.5–3(1).

only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C); *Papp v. City of Hammond*, (1967) 248 Ind. 637, 230 N.E.2d 326; *Boswell v. Lyon*, (1980) Ind.App., 401 N.E.2d 735; *Tabani v. Hester*, (1977) Ind.App., 366 N.E.2d 193. A fact is "material" for the purposes of summary judgment if it facilitates the resolution of any of the issues involved. *Brandon v. State*, (1976) 264 Ind. 177, 340 N.E.2d 756; *Richards v. Goerg Boat & Motors Inc.*, (1979) Ind.App., 384 N.E.2d 1084. Since summary judgment may not be used as a substitute for trial in determining factual issues, the trial court may not weigh conflicting evidence. *Suyemasa v. Myers*, (1981) Ind.App., 420 N.E.2d 1334; *Collins v. Dunifon*, (1975) 163 Ind.App. 201, 323 N.E.2d 264. Furthermore, summary judgment is inappropriate if conflicting inferences arise from the facts. *Clayton v. Penn Central Transportation Co.*, (1978) Ind.App., 376 N.E.2d 524; *Matter of Big Raccoon Conservancy Dist. v. Kessler Farms Corp.*, (1977) 173 Ind.App. 218, 363 N.E.2d 1004. However, even though conflicting facts on some elements of a claim exist, summary judgment may be proper when there is no dispute or conflict regarding a fact which is dispositive of the action. *Hayes v. Second National Bank of Richmond*, (1978) Ind. App., 375 N.E.2d 647.

■ Because summary judgment deprives the non-moving party of the right to a trial the burden is upon the moving party to establish that no genuine issue as to any material fact exists. *Barbre v. Indianapolis Water Co.*, (1980) Ind.App., 400 N.E.2d 1142; *Wozniczka v. McKean*, (1969) 144 Ind. App. 471, 247 N.E.2d 215. In reviewing a grant of summary judgment, facts set forth by the opponent's affidavits are taken as true, the depositions, admissions, etc., are liberally construed in favor of the opponent, and any doubt as to the existence of a genuine issue is resolved against the proponent. *Podgorny v. Great Central Ins. Co.*,

(1974) 160 Ind.App. 244, 254, 311 N.E.2d 640, 648; *Doe v. Barnett*, (1969) 145 Ind. App. 542, 251 N.E.2d 688. Even in cases where the court believes the motion's proponent is likely to prevail at trial, summary judgment is inappropriate if any genuine issue of material fact exists. *Barbre v. Indianapolis Water Co., supra*, 400 N.E.2d at 1145.

■ The phrase "natural condition of unimproved property" which is the basis of the trial court's ruling in favor of the City is not defined anywhere in the Indiana Tort Claims Act. Furthermore, our research and the research of the parties reveals there are no cases in which the appellate courts of Indiana have construed such language. When construing Indiana statutes Indiana courts are not bound by decisions from foreign jurisdictions. However, " '[i]t is a general rule of law that, where a question of statutory construction is one of novel impression, it is proper to resort to decisions of courts of other states construing statutory language which is identical or of a similar import. Indeed it is highly desirable that a statute be given a similar interpretation by the several states wherein it is in force.' " *Witherspoon v. Salm*, (1969) 251 Ind. 575, 579, 243 N.E.2d 876, 878, *quoting* 50 Am. Jur., *Statutes* § 323.

In this regard we note California Government Code § 831.2 provides in language very similar to our own statute: "Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any lake, stream, bay, river or beach." Two recent opinions construing this provision of the California statute are useful in the instant analysis of our own legislative enactment. The later of these cases, *Fuller v. State*, (1975) 51 Cal.App.3d 926, 125 Cal. Rptr. 586, observes that in essence the statutory language presents two related "fact questions": 1) whether the accident in question involves "unimproved" public property; and 2) whether such property is in its "natural" condition. *Id.* at 937, 125

Cal.Rptr. at 592. In *Fuller*, the Court upheld a jury verdict for the State, concluding a diver could not recover from injuries sustained when he jumped into shallow water from a strip of state-owned park property, since the land in question contained "no park facilities of any kind," *id.* at 935, 125 Cal.Rptr. at 590, and the evidence at trial revealed the construction of a yacht harbor and jetty "some distance" away produced only slight changes which "could not be described as improvements to the beach, nor did they in any way cause the depth of the water to be misleading." *Id.* at 937, 125 Cal.Rptr. at 592.

In reaching its ultimate conclusion, the *Fuller* court cited with approval its earlier decision in *Rendak v. State*, (1971) 18 Cal. App.3d 286, 95 Cal.Rptr. 665, establishing a test for immunity under the statute where part (but not all) of a public park has been improved. *Rendak* involved an action on behalf of a man who was killed when a portion of a cliff in a 64-acre state park slipped into the sea as he walked along a narrow "finger" of land below. Though it was within the park, the strip of land was outside the sandy beach serving as the park's principal recreational attraction, and was marked as a "Slide Area" which was "Submerged at High Tide." Significantly, the nearest improvements (a rest room and concrete "rings" for campfires) were along the sandy beach itself, some 650 to 900 feet from the accident site. In affirming a non-suit granted at the close of the plaintiff's case, the Court in *Rendak* observed, as the basis of its holding, that "[h]ere, the natural and unimproved area is shown by the evidence and the aerial photograph to be separate, distinct and remote from the improved portions, and thus clearly within Section 831.2 [*supra.*]" *Id.* at 289, 95 Cal.Rptr. at 667. In so concluding, the Court rejected plaintiff's argument that *any* improvement in a public park excludes the entire park from the immunity created by statute, since such a construction "would demolish the immunity as to an entire park area improved in any way other than by access roads and trails...."[2] *Id.* at 288, 95 Cal. Rptr. at 667. However, in adopting the test of whether the improvement is "distinct and remote," the Court also rejected the State's suggestion "the only actionable injury is one directly caused by a defect in some man-made improvement." *Id.*

With these opinions in mind,[3] we now turn to the case at bar, in which the record reveals the trial court focused entirely—and we believe incorrectly—on the tree itself, without regard to the improved parkland in which it is located.

■■ As noted above, it is undisputed that the soil surrounding the base of the tree and the tree's root system was covered by a lawn which was periodically mowed by the City. Ordinarily, one does not mow

**2.** We note the relevant California Act, like our own, specifically excludes such roads and trails from the "improvements" affecting the State's immunity. In this regard IC 34–4–16.5–3(4) provides a governmental entity is not liable if a loss results from "the condition of an unpaved road, trail, or footpath, the purpose of which is to provide access to a recreation or scenic area...."

**3.** Both parties refer us to two New Jersey cases which we find inapplicable. *Diodato v. Camden County Park Comm'n*, (1978) 162 N.J.Super. 275, 392 A.2d 665; *Kleinke v. City of Ocean City*, (1978) 163 N.J.Super. 424, 394 A.2d 1257. Unlike the California and Indiana statutes, N.J.Stat.Ann. 59:4–8 "extends immunity for an injury caused by *any* condition of unimproved property." *Freitag v. County of Morris*, (1981) 177 N.J.Super. 234, 426 A.2d 75, 78. More importantly, the New Jersey legisla-ture provided a comment to the Act which states the phrase "unimproved public property" should be liberally construed. The New Jersey courts have heeded the comment. *Freitag, supra.* The City refers us to *Garner v. City of Michigan City*, (N.D.Ind.1978) 453 F.Supp. 33, which involved a drowning in the waters of Lake Michigan near a municipal beach. In dictum the district court stated without elaboration or comment that the waters of Lake Michigan constitute a "natural condition of unimproved property;" therefore, assuming the City of Michigan City owned the Lake, the court noted the City would not have been liable for the drowning by virtue of the Indiana Tort Claims Act. In any event *Garner* provides little analytical guidance in the present case because the "natural condition of unimproved property" issue was not squarely before the court in *Garner.*

"wilderness." Additionally, the City had built a playground near the tree, and someone, allegedly the City, had placed a picnic table under the tree. In viewing such evidence of improvements within the immediate vicinity of the tree, however, the City urges us to accept a definition of "improvement" which at the threshold requires "permanence and value." In light of the fact there is nothing in the statutory phrase "natural condition of unimproved property" which *requires* the notion of permanence and value, we are unpersuaded. "[W]here a statute is clear and unambiguous, we have no choice but to hold it to its plain meaning." *Seymour Nat'l Bank v. State*, (1981) Ind., 422 N.E.2d 1223, 1226. In addition, we also conclude, based on the reasoning of *Rendak v. State, supra*, that the improvements undertaken in the tree's vicinity were neither so "remote" nor "distinct" from the tree as to preserve any immunity for the City under our statute. Growing trees are a part of the real estate on which they stand until they are severed. *Owens v. Lewis*, (1874) 46 Ind. 488, 520. Assuming the hackberry tree was in a "natural condition,"[4] the trier of fact nevertheless could have concluded it was part of the improved property at the time McKenna was injured. Supporting this conclusion are the facts the grass was mowed, the picnic table was under the tree, and the playground was within that area. Arguably, anyone using that part of the park could have perceived himself as being in a position of relative safety, and not in a "wilderness." Consequently, we hold the City was not entitled to summary judgment on the basis of governmental immunity because the City, at best, established only one-half of the necessary factual predicate—"natural condition of unimproved property"—needed for immunity to obtain. IC 34-4-16.5-3(1). In so holding we note our conclusion is consistent with the purpose of the Indiana Tort Claims Act to the extent the Act revives, in some circumstances, judicially abolished governmental immunity. At common law in Indiana a

city had a duty to remove a dead and rotten tree (standing between a city street and sidewalk) if the city had actual or constructive notice of the tree's condition. *City of Indianapolis v. Slider*, (1911) 48 Ind.App. 38, 95 N.E. 334, *after remand*, (1914) 56 Ind. App. 230, 105 N.E. 56.

Reversed and remanded to the trial court for further proceedings consistent with this opinion.

CONOVER and YOUNG, JJ., concur.

---

4. Arguably, the evidence before the trial court raised at least an inference the hackberry tree was not in a pristine, natural state, since, as we observed earlier, the arborist's affidavit merely asserted none of the tree's *living* branches had been pruned or trimmed in the last 18 years.