UNITED STATES of America,

v.

Robert M. CARSTENS, Jr.

Nos. 3111101, 3111102, 3111103.

United States District Court,
N.D. Indiana,
Hammond Division.

Nov. 20, 2013.

Assistant United States Attorneys Nicholas Padilla, Dean Lanter, and Joseph Reid, Attorneys for the United States of America.

Scott King, Attorney for Defendant Robert M. Carstens, Jr.

## OPINION AND ORDER

PAUL R. CHERRY, United States Magistrate Judge.

On July 26, 2013, the United States of America appeared by counsel Assistant United States Attorneys Nicholas Padilla and Dean Lanter. Defendant Robert M. Carstens, Jr. appeared in person and by counsel Scott King.

A Bench Trial was begun on three violation citations issued on March 21, 2012, by the United States Department of Interior National Park Service against Defendant Robert M. Carstens, Jr. The U.S. Govern-

ment presented evidence in its case-in-chief, then rested its presentation of evidence.

The parties agree that the primary issue in these combined matters is jurisdictional—whether the National Park Service Rangers had legal authority to enforce federal regulations against Carstens, and issue violation citations against him, given the locations where the alleged violations took place.

Prior to the presentation of evidence by Defendant Carstens in his case-in-chief, the parties agreed, and the Court ordered, that Carstens be permitted to file a written Motion For Judgment Of Acquittal with briefing to follow. On September 13, 2013, Carstens filed his Defendant's Motion For Acquittal. On October 18, 2013, the United States Government filed its Amended Response Of United States To Defendant's Motion To Dismiss At The Close Of The Government's Case. The Court ordered that no reply be filed.

In determination of the issues the Court FINDS, ORDERS, ADJUDGES, and DECREES:

## PROCEDURAL HISTORY

1. On March 21, 2012, the United States of America Department of Interior National Park Service issued three citations to Defendant Robert M. Carstens, Jr., alleging the following violations of federal law:

   1) Citation 3111101—Operating A Vehicle Off Designated Route;

   2) Citation 3111102—Launching A Water Craft At An Unauthorized Launch Site;

   3) Citation 3111103—Operating A Personal Water Craft Where Prohibited (not in issue for purposes of the Defendant's Motion For Acquittal).

2. On June 15, 2012, an Initial Appearance was held at which Carstens pled not guilty to the three charges.

3. On June 14, 2013, a Bench Trial was scheduled for July 26, 2013.

4. On July 26, 2013, a Bench Trial was begun. The United States Government presented evidence, then rested. Upon close of the Government's presentation of evidence, the parties agreed, and the Court ordered, that Carstens be permitted to file a written Motion For Judgment Of Acquittal, with briefing to follow, and with the Bench Trial to be in recess until ruling on the Motion.

5. On September 13, 2013, Carstens filed his Defendant's Motion For Acquittal as to Citations 3111101 and 3111102.

6. On October 17, 2013, the Government filed its Response of United States to Defendant's Motion to Dismiss at the Close of the Government's Case; on October 18, 2013, the Government filed its Amended Response (correcting a typographical error).

7. No reply brief was permitted by the Court.

## STANDARD OF REVIEW

8. Federal Rule of Criminal Procedure 29(a) provides, in part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."

9. The standard of review in this case is whether the government's evidence is insufficient to sustain a conviction.

10. In making this determination, the court is to view the evidence in a light most favorable to the Government and determine whether a rational trier of fact

could have found the essential elements established beyond a reasonable doubt. *United States v. Pree*, 408 F.3d 855, 865 (7th Cir.2005).

### FINDINGS OF FACT

11. The Indiana Dunes National Lakeshore (the "Park") is a national park, about 15,000 acres in size, located in far northern Indiana along the shore of Lake Michigan; it is operated by the United States Department of Interior National Park Service ("National Park Service").

12. The Town of Dune Acres, Indiana, is a small residential community located in far northern Indiana close by the shore of Lake Michigan; it is geographically surrounded by the Park and Lake Michigan shoreline and beach.

13. Robert M. Carstens, Jr. is a resident of the Town of Dune Acres; on behalf of the Town of Dune Acres as the Town's "Beach Commissioner," Carstens from time to time issues permits to the Town of Dune Acres residents to launch personal water craft from the beach and operate personal water craft in the nearby Lake Michigan water.

14. The Park follows the National Park Service regulations prohibiting operation of vehicles on a park beach and operation of personal water craft in park waters.

15. In both 2010 and 2011, Michael Bremer, the Park's Chief Ranger, told Carstens (and sometimes other people) that the operation of vehicles was not allowed on the beach near the Town of Dune Acres and the operation of personal water craft was not allowed in the nearby water of Lake Michigan at any point on the water within 300 feet of the edge of the water.

16. On or about March 12, 2012, Park Ranger Frank Quinto observed Carstens operate a motorized all-terrain vehicle on the Town of Dune Acres beach, recover a personal water craft from the Lake Michigan water, load it on a trailer, and with the all-terrain vehicle pull the trailer and water craft away from the shoreline on and over the beach.

17. On the same date at another time, Park Ranger Quinto observed Carstens operate the personal water craft in the Lake Michigan water within 300 feet of the shoreline (about 10 feet from the shoreline).

18. After Park Ranger Quinto consulted with his supervisor Chief Ranger Bremer, Quinto issued three written citations to Carstens.

19. Within the boundaries of the Park are parcels of land owned by the United States and parcels of land owned by private individuals and entities.

20. The legal description of the boundaries of the Park excludes the Town of Dune Acres, setting the northern boundary of the Town of Dune Acres at "the toe of the dunes." Tr. Ex. 2B.

21. The toe of a dune is the point where the slope of the dune meets the gentler slope of the beach.

22. Therefore, the beach area between the toe of the dunes and water edge of Lake Michigan north of the Town of Dune Acres lies within the boundaries of the Park and is not a part of the Town of Dune Acres; this is the area in which Carstens operated a motorized all-terrain vehicle and towed a trailer and personal water craft on the beach.

23. At the beach area contiguous to the Town of Dune Acres, the toe of the dunes and the Lake Michigan ordinary high water mark are approximately the same location.

24. According to the Indiana "public trust doctrine," the beach area between

the ordinary high water mark and the edge of the water of Lake Michigan (the land within the Park boundaries) is public land not owned by any person, entity, or municipality.

25. In 1978, the Governor of Indiana ceded to the National Park Service concurrent criminal jurisdiction over all lands within the boundaries of the Park. Tr. Ex. A.

26. The National Park Service also has jurisdiction to regulate (and to enforce its regulations concerning) activities on the water of Lake Michigan within 300 feet of the lake shore adjacent to Park boundaries.[1]

27. Lake Michigan is a navigable waterway subject to regulation by the United States federal government.

## CONCLUSIONS OF LAW

28. The Indiana Dunes National Lakeshore (the "Park") was created by federal statute. 16 U.S.C. § 460u.

29. The federal statute incorporates by reference the Park's boundary map on file at the office of the Director of the National Park Service, Department of the Interior.

30. The United States Secretary of the Interior is authorized to promulgate and enforce regulations concerning boating and other activities on or relating to waters located within areas of the national park system. 16 U.S.C. § 1a–2(h) provides:

> In order to facilitate the administration of the national park system, the Secretary of the Interior is authorized, under such terms and conditions as he may deem advisable, to carry out the following activities:
>
> . . .

(h) Regulations; promulgation and enforcement Promulgate and enforce regulations concerning boating and other activities on or relating to waters located within areas of the National Park System, including waters subject to the jurisdiction of the United States: *Provided,* That any regulations adopted pursuant to this subsection shall be complementary to, and not in derogation of, the authority of the United States Coast Guard to regulate the use of waters subject to the jurisdiction of the United States.

31. 36 C.F.R. § 3.8 prohibits launching a water vessel at any place other than a designated launching site within the Park's boundaries.

32. Under 36 C.F.R. § 3.9, the National Park Service prohibits the use of personal water craft within the Park's boundaries.

33. 36 C.F.R. § 4.10 prohibits the operation of a vehicle off road within the Park's boundaries except in designated off-road areas.

■ 34. Navigable waters in the United States are under the exclusive control of the federal government, and Lake Michigan is one of the waters of the United States. *Owen v. United States,* 851 F.2d 1404, 1408 (Fed.Cir.1988) (en banc).

35. The physical limit of federal navigable waterways includes within the navigable waterways the land below the ordinary high water mark. *United States v. Chi., Milwaukee, St. Paul, & Pac. R.R. Co.,* 312 U.S. 592, 596–7, 61 S.Ct. 772, 85 L.Ed. 1064 (1941).

36. 36 C.F.R. § 1.2(a)(3), as amended, provides:

---

**1.** In 1976, the boundary of the Park was amended to include a 300–foot strip into Lake Michigan. 16 U.S.C. § 460u, 1976 amend.

(a) The regulations contained in this chapter apply to all persons entering, using, visiting, or otherwise within:

. . .

(3) Waters subject to the jurisdiction of the United States located within the boundaries of the National Park System, including navigable waters and areas within their ordinary reach (up to the mean high water line in places subject to the ebb and flow of the tide and up to the ordinary high water mark in other places) and without regard to the ownership of submerged lands, tidelands, or lowlands;

. . . .

37. To regulate the use of lands beneath navigable waters within state boundaries, among other things, Congress enacted the Submerged Lands Act. 43 U.S.C. § 1301 et. seq.

38. Submerged land, or "lands beneath navigable waters," is defined in the Act as "all lands . . . covered by nontidal waters . . . up to the ordinary high water mark. . . . " 43 U.S.C. § 1301(a).

39. "Congress clearly has the power under the Commerce Clause to regulate the use of Landholders' submerged riparian property for conservation purposes and has not given up this power in the Submerged Lands Act." *Zabel v. Tabb,* 430 F.2d 199, 206 (5th Cir.1970).

40. The land between the edge of the water of Lake Michigan and the ordinary high water mark is held in public trust by the State of Indiana. *Ill. Cent. R. Co. v. State of Illinois,* 146 U.S. 387, 13 S.Ct. 110, 36 L.Ed. 1018 (1892); *Lake Sand Co. v. State,* 68 Ind.App. 439, 120 N.E. 714 (1918).

41. The boundaries of national parks include within them federal, state, and privately owned property without regard to ownership, not just federally owned land.

*Free Enter. Canoe Renters Ass'n of Missouri v. Watt,* 711 F.2d 852, 856 (8th Cir. 1983).

## ANALYSIS

■ 42. The acts committed by Carstens on March 21, 2012, resulting in Citation 3111101 (Operating A Vehicle Off Designated Route) and Citation 3111102 (Launching A Water Craft At An Unauthorized Launch Site) occurred on the beach area between the toe of the dunes (which is also the Lake Michigan ordinary high water mark) and the edge of Lake Michigan's water.

43. That is the beach area between the north boundary of the Town of Dune Acres and the edge of the Lake Michigan water; it is not owned by any person, entity, or municipality; it is land held in the public trust by the State of Indiana.

44. The activities of Carstens at the beach area on March 12, 2012, constituted "boating and other activities on or relating to waters located within areas of the National Park System." 16 U.S.C. § 1a–2(h).

45. The National Park Service had and has jurisdiction to regulate that beach area and properly had and has legal jurisdiction to enforce its regulations at that beach area.

46. Carstens' launch of a water craft into Lake Michigan where there was no authorized launch site was in violation of 36 C.F.R. § 3.8.

47. Carstens' operation of an all-terrain vehicle on the beach area within the Park boundaries towing the personal water craft on a trailer where there was no designated route was in violation of 36 C.F.R. § 4.10.

## CONCLUSION

48. The Court finds that the Government's evidence on Citations 3111101 and

3111102 is sufficient to sustain convictions; the Court finds that a rational trier of fact can find the essential elements established beyond a reasonable doubt.

49. Accordingly, the Defendant's Motion For Acquittal filed September 13, 2013, is hereby **DENIED.**

50. The Court will by separate notice set a telephonic Scheduling Hearing for the purpose of scheduling the conclusion of the Bench Trial begun on July 26, 2013.